No. 21-56305

_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

JOCELYN SUSAN BUNDY, an individual,
*Plaintiff—Appellant,*

*v.*

NIRVANA L.L.C., a Washington Limited
Liability *Company; et al.,*
*Defendants—Appellees.*

_____

## APPELLEES' RESPONSIVE BRIEF

_____

On Appeal from the United States District Court for the
Central District of California, Los Angeles
Case No. 2:32-cv-03621-DSF-MAA
Honorable Dale S. Fischer

_____

| | |
|---|---|
| Mark S. Lee | Zia F. Modabber |
| Rimon, P.C. | Leah E.A. Solomon |
| 2029 Century Park East, Suite 400N | Katten Muchin Rosenman LLP |
| Los Angeles, CA 90067 | 2029 Century Park East, Suite 2600 |
| (310) 361-5776 | Los Angeles, CA 90067 |
| | 310.788.4400 |
| | |
| *Attorneys for Defendants—Appellees* | *Attorneys for Defendants—Appellees* |
| Nirvana, L.L.C. | Live Nation Merchandise, LLC, |
| | Merch Traffic LLC, and |
| | Silva Artist Management, LLC |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant-appellees Live Nation Merchandise, LLC and Merch Traffic LLC identify their parent corporation, Merch Nation Holdings, LLC. Merch Nation Holdings, LLC's parent corporation is Live Nation Worldwide, Inc., whose parent corporation is Live Nation Entertainment, Inc. Liberty Media Corporation, a publicly held corporation, owns more than ten percent of the outstanding stock of Live Nation Entertainment, Inc. There is no parent corporation of defendant-appellees Nirvana, L.L.C. or Silva Artist Management, LLC, nor any publicly held corporation that owns ten percent or more of their stock.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STANDARD OF REVIEW ......................................................................1

STATEMENT OF ISSUES .....................................................................3

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............3

A.    Appellant and the Illustration at Issue Below..................................3

B.    Bundy Relies on English Copyright Law to Support Her U.S. Copyright Infringement Claim. ......................................................3

C.    Facts Surrounding Creation of the Illustration. ..............................4

D.    U.S. Publication of *The Divine Comedy*..........................................6

E.    Appellees' Alleged Infringement. ...................................................9

F.    The District Court Grants Appellees' Motion to Dismiss.............10

G.    The District Court Denies Bundy's Motion for Reconsideration. ...............11

SUMMARY OF ARGUMENT ..............................................................11

ARGUMENT .........................................................................................13

A.    The District Court Did Not Abuse Its Discretion in Dismissing Bundy's Complaint. ......................................................................13

    1.    The District Court Applied the Correct Legal Standard. ....................13

    2.    The District Court Did Not Abuse Its Discretion in Ruling That England Is an Adequate Alternative Forum.......................................15

    3.    The District Court Did Not Abuse Its Discretion in Ruling That British Citizen Bundy's Selection of a U.S. Forum Was Entitled to Less Deference. ...............................................23

## TABLE OF CONTENTS (CONT'D)

4.   The District Court Did Not Abuse Its Discretion in Considering the Evidence Appellees Introduced on the Issue of Copyright Ownership. ............................................................................27

5.   The District Court Did Not Abuse Its Discretion in Ruling That Public Interest Factors Favor a U.K. Forum. ....................................34

6.   The District Court Did Not Abuse Its Discretion in Ruling that Private Interest Factors Favored an English Forum............................42

    a.   Residence and Convenience of Parties and Witnesses............42

    b.   Access to Physical Evidence and Other Sources of Proof........45

    c.   Enforceability of British Judgment............................................48

    d.   The District Court Did Not Abuse Its Discretion in Finding the "Other Practical Problems" Factor Neutral. ..........51

B.   There is No Basis for Reassignment on Remand ..........................................52

CONCLUSION .......................................................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayco Farm, Inc. v. Ochoa,*
862 F.3d 945 (9th Cir. 2017) .................................................................14, 23, 40

*Ayco Farms, Inc. v. Ochoa,*
882 F.3d 945 (9th Cir. 2017) .............................................................................2

*Bank of Credit and Commerce International (Overseas) Ltd. v. State Bank of Pakistan,*
273 F.3d 241 (2d Cir. 2001) ...........................................................................22

*Carijano v. Occidental Petrol Corp.,*
643 F.3d 1216 (9th Cir. 2011) ........................................................13, 25, 42, 44

*Cell Film Holdings LLC v. Acosta,*
No. 2:16-cv-01853-JAD-VCF, 2017 WL 5895130, *3 (D. Nev. Nov. 29, 2017) ...............................................................................................51

*Chappell & Co. Ltd. & Others v. Redwood Music Ltd.*
[1981] R.P.C. 337 .......................................................................................19, 20

*Coakes v. Arabian American Oil Co.,*
831 F.2d 572 (5th Cir. 1987) .......................................................................24, 52

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.,*
918 F.2d 1446 (9th Cir 1990) ...........................................................................15

*Daniels-Hall v. National Educ. Ass'n,*
629 F. 3d 992 (9th Cir. 2010) ...........................................................................27

*De Fontrune v. Tofsy,*
838 F.3d 992 (9th Cir. 2016) ............................................................................27

*Gaylord v. United States,*
777 F.3d 1363 (Fed. Cir. 2015) ........................................................................38

*Herbert v. VWR Int'l, LLC,*
686 Fed. Appx. 520 (9th Cir. 2017) ..............................................................45, 46

# TABLE OF AUTHORITIES CONT'D

**Page(s)**

## Cases

*In re Crystal Waterfalls, LLC*,
768 Fed. Appx. 763 (9th Cir. 2019) ................................................ 30

*In re Hashim*,
213 F.3d 1169 (9th Cir. 2000) ........................................................ 48

*John Thomson v. Her Majesty's Advocate General*
[1845] 8 E.R. 1294 .......................................................................... 18

*Kona Enterprises, Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000) ............................................................ 2

*Koschel v. Bd. of Trustees of Calgary Bd. of Educ. Sch. Dist. No. 19*,
61 Fed. Appx. 508 (9th Cir. 2003) ................................................. 51

*Leetsch v. Freedman*,
260 F.3d 1100 (9th Cir. 2001) ........................................................ 39

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
583 F.3d 656 (9th Cir. 2009) .......................................................... 49

*Lucasfilm Ltd. v. Ainsworth*
[2011] UKSC 39 .................................................................... *passim*

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137, 1147 (9th Cir. 2001) .............................................. 40

*Magnin v. Teledyne Continental Motors*,
91 F.3d 1424 (11th Cir. 1996) .................................................. 25, 52

*McSherry v. City of Long Beach*,
423 F.3d 1015 (9th Cir. 2005) ........................................................ 53

*Miller v. Sawant*,
18 F.3d 328 (9th Cir. 2021) ............................................................ 53

*Murray v. British Broad. Corp.*,
81 F.3d 287 (2d Cir. 1996) ........................................................ 24, 51

iv

# TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*Neelon v. Bharti,*
  596 Fed. Appx. 532 (9th Cir. 2014)....................................................46

*Panayiotou v. Sony Music*
  [1994] Ch. 142 ...............................................................................48

*Peer International Corp. v. Thermidor Music Publishers Ltd (No. 1),*
  [2004] R.P.C. 23 .............................................................................18

*Perfect 10, Inc. v. Giganews, Inc.,*
  No. 11-CV-00905 H(MDD), 2011 WL 10779280 (S.D. Cal.
  August 25, 2011)..............................................................................18

*Performing Right Society Ltd. v. Qatar Airways Group QC SC,*
  [2020] EWHC 1872 (Ch), 2020 WL 04041316 ...............................17

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981).................................................................*passim*

*Ranza v. Nike, Inc.,*
  793 F.3d 1059 (9th Cir. 2015) ...........................................14, 25, 40

*Ravelo Monegro v. Rosa,*
  211 F.3d 509 (9th Cir. 2000) ......................................................24, 26

*Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.*
  [1978] A.C. 547 ..............................................................................48

*Soc'y of Lloyd's v. Ashenden,*
  233 F.3d 473 (7th Cir. 2000) ...........................................................48

*Soc'y of Lloyd's v. Turner,*
  303 F.3d 325 (5th Cir. 2002) ...........................................................49

*Society of Lloyd's v. Blackwell,*
  127 Fed. Appx. 961 (9th Cir. 2005)..................................................48

# TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*Troll Co. v. Uneeda Doll Co.*,
  483 F.3d 150 (2d Cir. 2007) ...............................................36

*Twin Books Corp. v. The Walt Disney Co*,
  83 F.3d 1162 (9th Cir. 1996) ..............................................35

*United Feature Syndicate, Inc. v. Koons*,
  817 F. Supp. 370 (S.D.N.Y. 1993) .....................................38

*United States v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) .............................................2

*Vivendi SA v. T-Mobile USA, Inc.*,
  No. C06-152JLR, 2008 WL 2345283 (W.D. Wash. June 5, 2008)....................28

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) ....................................*passim*

*Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Trust*,
  979 F.3d 1209 (9th Cir. 2020) ............................................30

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021) ............................................27

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ............................................49

**Statutes**

17 U.S.C. § 101 ..............................................................37

17 U.S.C. § 104A(d)(2)(A) ...............................................9, 11, 36, 37

17 U.S.C. § 104A(d)(3)...................................................37, 50

17 U.S.C. § 104A(e)(2)(B) ...............................................36

17 U.S.C. § 104A(h)(4).....................................................35, 36

# TABLE OF AUTHORITIES CONT'D

**Page(s)**

17 U.S.C. § 104A(h)(6)(D) ........................................................35

17 U.S.C. § 411(a) .................................................................3

Act of 1975, 1975 Chapter 34 ...................................................47

Cal. Civ. Proc. Code § 1716(a)–(d) ...........................................48

Cal. Civ. Proc. Code § 1723 ....................................................49

Copyright Act......................................................................9

Copyright Act of 1911 ...........................................................19

Copyright Act of 1911, § 35(1)(c) .............................................19

England's Copyright Act of 1911, § 5(2) ....................................19

England's Imperial Copyright Act of 1911 (1).............................18

U.K. Evidence Act § 2(4).........................................................47

Under England's Copyright Act of 1911, § 16(3) ..........................19

URAA ........................................................................*passim*

Uruguay Round Agreements Act of 1994 .....................................8

**Rules**

Fed. R. Civ. Proc. 28 (b) .........................................................46

Rule 20(a)(2) of the Federal Rules of Civil Procedure.....................51

**Other Authorities**

https://bookriot.com/first-edition/..............................................7

https://www.hcch.net/en/instruments/conventions/full-text/?cid=82 .....................46

vii

# TABLE OF AUTHORITIES CONT'D

**Page(s)**

https://www.legislation.gov.uk/ukpga/1975/34#:~:text=An%20Act%2
0to%20make%20new,effective%20throughout%20the%20United
%20Kingdom ...................................................................................47

*IOBA Standard*, December 6, 2001,
https://www.ioba.org/standard/2001/12/a-short-history-of-
paperbacks/ .........................................................................................7

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §
12.01[C] (1963)................................................................................17

Oliver Carlett, "A Short History of Paperbacks,"....................................7

viii

# INTRODUCTION

Plaintiff-Appellant Jocelyn Susan Bundy ("Bundy"), a British citizen, claims copyright ownership of a work her English grandfather allegedly created in Britain 70+ years ago, and she claimed her ownership of that foreign work supported U.S., U.K., and German copyright infringement claims she brought in a California federal court. The work has been in the public domain in the U.S. since 1949 or 1950, but the U.K. and German copyright infringement claims raised complex U.K. and German copyright law issues based on 70+ year old documents and witnesses in England.

The district court dismissed Bundy's U.S. action on *forum non conveniens* grounds in favor of further proceedings in England, and denied Bundy's motion for reconsideration of that decision. Bundy appeals those rulings.

The district court did not abuse its discretion in so ruling, and this Court should affirm the district court's decisions for the reasons described below.

# STANDARD OF REVIEW

"[T]his court's review of a district court's *forum non conveniens* determination is highly deferential…. In cases concerning foreign plaintiffs, this court rarely has reversed a district court's grant of a motion to dismiss for *forum non conveniens*." *Vivendi SA v. T-Mobile USA Inc.,* 586 F.3d 689, 693-94 (9th Cir. 2009). Such a decision "may be reversed only when there has been a clear abuse

of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves *substantial* deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981), as quoted in *Ayco Farms, Inc. v. Ochoa*, 882 F.3d 945, 948 (9th Cir. 2017) (emphasis added). A district court abuses its discretion only if it applies an incorrect legal standard, applies the correct standard "illogically, implausibly, or in a manner without support in inferences that may be drawn from facts in the record[,]" or "strike[s] an unreasonable balance of relevant factors." *United States v. Hinkson,* 585 F.3d 1247, 1251 (9th Cir. 2009) (enbanc), [https://www.westlaw.com/Document/I44c343f2c9fd11deb08de1b7506ad85b/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0](https://www.westlaw.com/Document/I44c343f2c9fd11deb08de1b7506ad85b/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0) (sc.Search).

Similarly, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A district court's denial of a motion for reconsideration thus should not be reversed unless the district court abused its discretion in denying that such "highly unusual circumstances" were present. *Id.*

## STATEMENT OF ISSUES

1.      Whether the district court abused its discretion in (a) dismissing Bundy's complaint on *forum non conveniens* grounds on the facts presented, and (b) denying Bundy's motion for reconsideration of its initial ruling.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.      Appellant and the Illustration at Issue Below.

Bundy is a U.K. citizen who claims to own the copyright in a drawing of the "Circles of Hell" (the "Illustration") she says her late grandfather C.W. Scott-Giles created in England. (3-ER-500-01.)  She claimed Scott-Giles created it to accompany Dorothy L. Sayers's English language translation of Volume 1 of Dante Alighieri's *The Divine Comedy,* first published in England by Penguin Books Ltd. in 1949.  (3-ER-503, 530.)  Bundy alleged that "[a]s the sole heir of the copyright in her late grandfather C.W. Scott-Giles' works, Plaintiff Ms. Bundy is the legal owner of the copyright in the ['Circles of Hell'] Illustration." (3-ER-506-507.)

### B.      Bundy Relies on English Copyright Law to Support Her U.S. Copyright Infringement Claim.

Bundy's complaint did not allege a U.S. copyright or copyright registration, which generally is needed to file suit for copyright infringement under U.S. law. *See* 17 U.S.C. §411(a).  Nor did it allege that Sayers' translation of *The Divine Comedy*, in which the Illustration was first published, included a copyright notice

in Scott-Giles's name. (*See* 3-ER-500-520.)  Indeed, the exhibits attached to her complaint establish that, while Scott-Giles was always credited with creating the maps and drawings in that volume, its only copyright notice was in the name of Dorothy L. Sayers. (3-ER-530, 554.)

Bundy instead alleged that "[a]s a work created by a British citizen and first published in the United Kingdom, the Illustration is a 'foreign work' for the purposes of U.S. copyright laws[,]" and she sued to protect that "foreign copyright-protected work."  (3-ER-505, 507.)  Thus, her U.S. and English law copyright infringement claims required the district court to determine whether Bundy owns the copyright in the Illustration under the foreign law that created it, namely English law.  (3-ER-445-446, 505.)  And her German copyright infringement claim required determination of the German copyright under German law.  (3-ER-471-472.)

### C.    Facts Surrounding Creation of the Illustration.

Bundy's complaint tersely asserted that the Illustration is "wholly original to Mr. Scott-Giles[,]" (3-ER-502), but a series of letters and drawings translator Dorothy L. Sayers sent to Scott-Giles in 1946 raise doubts about Scott-Giles' contributions to and copyright ownership in the Illustration.  (Supplemental

Excerpts of Record ["SER"]-43-44, 48, 55-57.)[1] They show that (i) Sayers or publisher Penguin Books Ltd. ("Penguin") engaged Scott-Giles to create the book's illustrations (SER-53-54): (ii) Sayers agreed to pay Scott-Giles for his work, while warning him, "[I]t won't mean much money!" (SER-59); (iii) Sayers drew a number of and perhaps all of the drawings credited to Scott-Giles, and she engaged Scott-Giles principally because of his skill in inking and lettering her pencil drawings (SER-55, 64-67); (iv) Sayers drew in pencil the images of "Hell" on which Scott-Giles relied for his inked final drawings of "Hell" (SER-54-59, 62-64); (v) Sayers and Penguin supervised, approved, and exercised control over what Scott-Giles created and what images were used in *The Divine Comedy* (SER-52-59, 62-65); and (vi) Sayers alone negotiated with Penguin over the drawings published in *The Divine Comedy* to which she contributed (SER-66-67). Sayers' copyright notice in her name of the entirety of *The Divine Comedy* (3-ER-554), which necessarily includes the Illustration, is fully consistent with her personally creating, commissioning, and supervising creation of the illustrations credited to Scott-Giles as revealed in these letters.

Copyright ownership under the U.K. and German law that governs the copyright ownership issues thus would have to be decided based on the above

---

[1] Bundy's Excerpts of Record omit this evidence, and Defendant-Appellees provide it with their concurrently field Supplemental Excerpts of Record for this reason.

facts, and whatever other facts and documents could be obtained from third parties in discovery. Those individuals and entities, and extant relevant documents concerning these 70+ year old events, are located in England. (SER-43-45.)

### D.   U.S. Publication of *The Divine Comedy*.

Bundy's counsel previously acknowledged that *The Divine Comedy* "was published in 1949," and provided counsel for Defendant-Appellee Nirvana L.L.C. ("Nirvana") with a draft complaint so stating. (*See* 3-ER-541.) When it was pointed out to her that a 1949 U.S. publication was likely fatal to her claim under U.S. copyright law (*see* 3-ER-541-44, 559), Bundy revised her complaint to allege, "[o]n information and belief," that there was no U.S. publication in 1949 and added claims under U.K. and German copyright law. (3-ER-503, 536-540, 564.) Notwithstanding her new allegation, the complaint's exhibits contain substantial contradictory evidence compelling the conclusion that the Illustration was in fact published in the United States in 1949 and, consequently, that Bundy's U.S. copyright claims are wholly defective.

For example, Exhibit 4 to the complaint, on which Bundy relies for her allegation, not only provides no "information" to support her purported "belief" that there was no U.S. publication in 1949, both Exhibit 4 and another exhibit affirmatively support a 1949 U.S. publication date. Page 6 of Exhibit 4 to Bundy's complaint states that "[a]n American branch of Penguin Books Ltd. was

established in 1939," while page 5 of that same Exhibit 4 lists "1.86 million" total book sales by Penguin in 1949 "including U.S.A.[,]" consistent with a 1949 U.S. publication date.  (3-ER-539, 540.)  Additionally, Page 9 of Exhibit 6 to the complaint is a copy of the copyright notice page of a U.S. paperback edition of *The Divine Comedy* which states, "first published 1949" and "Copyright 1949 by Dorothy L. Sayers[,]" indicating  a U.S. publication in 1949.  (3-ER-554.)  *See* Tirzah Price, *How To Tell If A Book Is A First Edition*, Book Riot (Oct. 3, 2019), https://bookriot.com/first-edition/ ("The first thing you do" if you want to tell if a book is a first edition "is check the copyright date!  If the copyright date is the same as the year the book was published, then that is a good first sign….").

Other evidence supports a 1949 U.S. publication. The inner sleeve of *The Letters of Dorothy L. Sayers,* Vol. Three, states that "[w]hen her [that is, Dorothy L. Sayers'] translation of *Inferno* was published in 1949 the first issue of 50,000 copies was immediately sold out," consistent with a simultaneous "first publication" in both the U.K. and U.S.  (SER-43-44, 49.)  The world's largest online cooperative of college and university libraries, known as the "World Catalog" or "OCLC" (acronym for "Online Computer Library Center"), states that the "Publisher" of the 1949 edition of *The Divine Comedy* was "Penguin Books" in "Baltimore."  (SER-45, 69-73.)  The paperback "Penguin Classics Reprint" edition of *The Divine Comedy,* from which page 9 of Complaint Exhibit 6 was copied, was

first published and has been available in the U.S. since June 30, 1950. (SER-42, 73-74.) That also implies an earlier U.S. hardcover publication, because "[b]y the end of the 1940's…pretty much all paperbacks were reprints of hardcover titles." Oliver Carlett, "A Short History of Paperbacks," *IOBA Standard*, December 6, 2001, https://www.ioba.org/standard/2001/12/a-short-history-of-paperbacks/.

These 1949 and 1950 U.S. publication dates and other admissions in the complaint's exhibits underscore the frivolous nature of Bundy's initial U.S. copyright infringement claim, as they show publication without compliance with then-existing U.S. copyright law formalities. Consequently, and as a matter of law, the work was injected into the public domain in the United States upon its U.S. publication. (3-ER-530, 554.)

Nirvana pointed out these fatal deficiencies in Bundy's U.S. copyright infringement claim after Bundy sent it a demand letter and proposed complaint. (3-ER-547-551, 559-561, 565-567.) Bundy thereafter revised her Complaint before filing it to add the "information and belief" statement that there was "no U.S. publication" in 1949, add references to the Uruguay Round Agreements Act of 1994 ("URAA") to claim that her alleged foreign copyright in the Illustration was "restored" by the URAA in 1996, and add the other named Appellees herein. (*Cf.* SER-45, 85-98 *and* 3-ER-505-506, 547-551.) Bundy also added copyright claims under U.K. and German law. (*Cf.* SER-86-96 *and* 3-ER-513-16.)

## E.    Appellees' Alleged Infringement.

Bundy's initial demand letter only asserted a claim for copyright infringement under U.S. law by Appellee Nirvana, L.L.C. ("Nirvana").  After Nirvana's counsel responded to the merits of that claim, Bundy ultimately filed a complaint adding claims for copyright infringement under U.K. and German law. (3-ER-507-508, 513-515.)  The addition of these claims only after Nirvana pointed out the defects of her U.S. claim implies Bundy's lack of belief in the strength of her U.S. claim. Although *The Divine Comedy* never included a copyright notice in the name of Scott-Giles as described above, Bundy further alleged that Nirvana's use of a copyright notice on its t-shirt and "removal" of references to Scott-Giles that were never part of the original Illustration violated the copyright management provisions of the Copyright Act. (3-ER-515-518.)

Other evidence presented below confirmed that Kurt Cobain of Nirvana created and Nirvana began selling the t-shirt on which the public domain "Circles of Hell" Illustration appears in 1989, and did so continuously until receiving Bundy's first demand letter.  (3-ER-393-394, 493, 505.)

Although Nirvana rejected Bundy's copyright infringement claims, after receiving that letter it decided to stop selling its "Circles of Hell" t-shirt, and it so advised Bundy in writing before she filed suit.  (3-ER-493-494, 561.)  All sales of the Nirvana t-shirt by Appellees stopped before suit was filed.  (3-ER-494, 497.)

9

That made Bundy's U.S. copyright infringement claims against Appellees under the URAA both premature and impossible as described *infra*.[2] 17 U.S.C. § 104A(d)(2)(A).

### F. The District Court Grants Appellees' Motion to Dismiss.

Appellees moved to dismiss Bundy's claims on *forum non conveniens* grounds and, alternatively, asked the court to decline supplemental jurisdiction over the U.K. and German copyright infringement claims because they raised complex foreign law issues that substantially predominated over Bundy's meritless U.S. copyright infringement claim. (SER-6-40.)

The district court granted Appellees' motion to dismiss based on its evaluation of *forum non conveniens* factors in an 18-page decision. (1-ER-17-34.)

To further protect Bundy, the trial court conditioned dismissal on Appellees' accepting personal jurisdiction in England and submitting to discovery in the United States, as well as on a U.K. court's acceptance of jurisdiction over all of Bundy's claims, among other conditions. Appellees agreed to all of the district court's conditions in a notice filed with the court. (1-ER-33; SER-109-112.) The court did not rule on Appellees' alternative motion for an order declining supplemental jurisdiction over Bundy's U.K. and German copyright claims

---

[2] *See* Section A.5., *infra*.

because of its dismissal of Bundy's entire complaint on *forum non conveniens* grounds. (1-ER-33.)

### G. The District Court Denies Bundy's Motion for Reconsideration.

Bundy moved for reconsideration of the district court's ruling by submitting what she claimed was "new evidence" and rearguing legal theories the district court had previously rejected. (1-ER-2-15.) The district court denied Bundy's motion. (*Id.*) In so ruling, the district court expressed skepticism that the proposed new evidence, consisting of a one-paragraph declaration from the claimed trustee of Dorothy L. Sayers' estate, was "new" because Bundy had access to it before the court ruled on the motion, and was unpersuaded that the evidence was consequential on the merits. (1-ER-5-7.) The district court also was not persuaded by Bundy's "continuing infringement" arguments because they did not bear on the question of whether Bundy owned the copyright at issue and there was evidence the continuing sales were not in fact the result of any "official[] license[]" by Appellees. (1-ER-6-7.) The district court also ruled that Bundy's re-argument of the various *forum non conveniens* factors was procedurally improper and substantively unpersuasive. (1-ER-7-15.)

### SUMMARY OF ARGUMENT

The district court soundly exercised its discretion when it dismissed Bundy's complaint on *forum non conveniens* grounds and denied Bundy's motion to

reconsider its ruling. It reasonably applied correct legal standards. It properly ruled that the United Kingdom was an acceptable alternative legal forum because it provides adequate due process and legal remedies, and because the U.K. Supreme Court decision Bundy cited holds that a U.K court would accept jurisdiction over her U.S. copyright infringement claims. The district court reasonably applied public and private interest factors to rule that England was a preferable forum because governing English law, the relative interests of the California and English forums, the residence, convenience, and amenability to compulsory judicial process of the parties, witnesses, and relevant evidence, and uncertainty of international discovery procedures all favored resolution in England. And, the district court reasonably denied Bundy's motion for reconsideration because the "new" evidence presented could have been provided with the original motion, and was substantively unpersuasive. The district court also held that Bundy's re-argument of the district court's rulings was not proper on a motion for reconsideration, and also was substantively unpersuasive. The district court's rulings should be affirmed.

## ARGUMENT

### A. The District Court Did Not Abuse Its Discretion in Dismissing Bundy's Complaint.

This Court should decline Bundy's invitation to reconsider and reverse the district court's decisions because, as shown below, the district court did not abuse its discretion.

### 1. The District Court Applied the Correct Legal Standard.

Bundy's argument that the district court "misunderstood and understated" Appellees' burden in granting the motion to dismiss (Appellant's Opening Brief ["AOB"] 13-14) lacks merit for several reasons.

First, the district court correctly cited and applied the standards for ruling on a *forum non conveniens* motion to dismiss articulated by the Supreme Court in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) and this Court in *Carijano v. Occidental Petrol Corp.*, 643 F.3d 1216 (9th Cir. 2011). (1-ER-19-20.) Indeed, the district court cited and quoted from *Carijano* no less than fourteen times throughout its order granting Appellees' motion. (1-ER-19-25.) Bundy's contention that the district court did not apply the standard enunciated in *Carijano* is specious.

Second, nothing in the district court's order supports Bundy's assertion that the district court "applied a different standard." (AOB 13.) Notably, Bundy does not identify the "different standard" she claims the district court applied. Nor can

13

she point to any part of the district court's order to show that it deviated from the legal standard established by this Court in *Carijano*.

Third, three different panels of this Court have affirmed *forum non conveniens* dismissal in circumstances analogous to those here. *See Ayco Farm, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) (affirming *forum non conveniens* dismissal of a California suit between a Florida-based plaintiff and Mexican defendant because the crux of the dispute was in Mexico, many witnesses were in Mexico, and Mexican law would likely apply); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078-79 (9th Cir. 2015) (private and public factors favored dismissal of an Oregon suit against an Oregon defendant by a U.S. plaintiff residing in the Netherlands, because the Netherlands was a more convenient forum for trial, and Netherlands law would govern); *Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 695-96 (9th Cir. 2009) (affirming dismissal of a complaint by a foreign plaintiff on *forum non conveniens* grounds because plaintiff engaged in forum shopping and international discovery and other factors favored dismissal). Significantly, none of these cases contains the "oppression and vexation" language Bundy claims the district court failed to apply here. The district court did not abuse its discretion in following these authorities to dismiss Bundy's complaint, especially given that Bundy did not attempt to address them in her opposition to the motion below.

14

**2.      The District Court Did Not Abuse Its Discretion in Ruling That England Is an Adequate Alternative Forum.**

Bundy's argument that England is not an adequate alternative forum "as a matter of law" (AOB 14-20) lacks merit for many reasons.

First, it ignores that, as a condition of dismissal, Appellees voluntarily agreed to "submit themselves to the jurisdiction of a U.K. court if this action is filed by Bundy in the U.K." (1-ER-33; SER-110.)  Nothing in the case law Bundy cites suggests that the *timing* of Appellants' stipulation warrants reversal.  (*See* AOB 15-16.)  Indeed, this Court has held that dismissal conditioned on the defendants' agreement to submit to the jurisdiction of a foreign court "satisfies the legal standard set forth in *Piper Aircraft* . . . ."  *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1450 (9th Cir 1990).

Second, Bundy is incorrect that an English court would decline jurisdiction over her U.S. copyright infringement claims based on *Lucasfilm Ltd. v. Ainsworth* [2011] UKSC 39 (appeal taken from [2009] EWCA Civ 1328).  To the contrary, an English court would consider Bundy's copyright infringement claims under U.S. law against Appellees under *Lucasfilm*, for several reasons.

Most fundamentally, an English court would find Bundy's U.S. copyright infringement claim justiciable because *Lucasfilm* holds, precisely contrary to Bundy's argument, that U.S. copyright infringement claims *can* be pursued in the United Kingdom, and it reversed a previous English common law rule in so

holding. *Lucasfilm Ltd. v. Ainsworth* [2011] UKSC 39 at ¶¶ 104-05. (2-ER-150-51.)

In *Lucasfilm*, plaintiffs alleged copyright infringement of the "Imperial Stormtrooper" helmet used in the first "Star Wars" motion picture. Plaintiffs there first obtained a U.S. default judgment against the English defendant from a court in the Central District of California, based on the alleged infringement of a U.S. copyright in a work created in the United States. *Lucasfilm* at ¶¶ 1-4. (2-ER-117-18.) Plaintiffs then filed suit in England to enforce the U.S. default judgment and assert new claims for copyright infringement under both U.S. and U.K. law. *Lucasfilm* at ¶ 4. (2-ER-118.)

The English lower court declined to consider the U.S. copyright infringement claim based on the 19th century English common law *Moçambique* rule that an English court "has no jurisdiction to entertain an action for…the determination of the title to, or the right to the possession of, any immovable situate out of England…." *Lucasfilm* at ¶¶ 51, 54. (2-ER-135.)

On appeal, the U.K. Supreme Court reviewed English, European, and U.S. legal authorities and recognized that "the modern trend is in favour of the enforcement of foreign intellectual property rights[,]" and it found "no issues of policy which militate against the enforcement of foreign copyright." *Lucasfilm* at ¶¶ 108-09. (2-ER-152.) It also expressed doubt that the *Moçambique* rule should

16

ever apply in the copyright infringement setting, stating, "It is possible to see how the rationale of the *Moçambique* rule can be applied to patents…. But it is very difficult to see how it could apply to copyright." *Lucasfilm* at ¶ 106. (2-ER-151.) It therefore reversed the ruling below and held that U.S. copyright claims are "justiciable" in English legal proceedings, stating:

> We have come to the firm conclusion that, in the case of a claim for infringement of copyright of the present kind, the claim is one over which the English court has jurisdiction, provided that there is a basis for *in personam* jurisdiction over the defendant, or, to put it differently, the claim is justiciable.

*Lucasfilm* at ¶ 105. (2-ER-151.)

Thus, "[i]t was established by the [U.K.] Supreme Court in *Lucasfilm v. Ainsworth*…that the English court can have jurisdiction over claims for infringement of copyright by non-UK acts and under non-UK law where there is a basis for *in personam* jurisdiction." *Performing Right Society Ltd. v. Qatar Airways Group QC SC*, [2020] EWHC 1872 (Ch), 2020 WL 04041316 (denying motion to dismiss on *forum non conveniens* grounds English proceeding that alleged infringement of foreign copyrights outside the United Kingdom, because English courts could consider the foreign copyright infringement claims). In light of this holding, the district court did not abuse its discretion in finding that an English court would exercise jurisdiction over Bundy's U.S. copyright law claims.

17

Other language in *Lucasfilm* bolsters the district court's conclusion.
*Lucasfilm* stated that "[t]he basis for what remains of the [*Moçambique*] rule was
said by the House of Lords…to be that controversies should be decided in the
country of the situs of the property…." *Lucasfilm* at ¶ 106. (2-ER-151.) Here,
England is the situs of the copyrighted work Bundy claims to own, because "[a]
copyright… has no situs apart from the domicile of the proprietor" under both U.S.
and English law. *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-CV-00905 H(MDD),
2011 WL 10779280, *2 (S.D. Cal. August 25, 2011), citing 4 Melville B. Nimmer
& David Nimmer, *Nimmer on Copyright* §12.01[C] (1963); *see also Peer
International Corp. v. Thermidor Music Publishers Ltd (No. 1)*, [2004] R.P.C. 23,
*456, 476 (copyrights that Cuban musicians assigned to English music publisher
not repatriated to Cuba by later Cuban statute because the earlier assignment meant
that the copyrights were situated in England when the Cuban law was enacted);
*John Thomson v. Her Majesty's Advocate General*, [1845] 8 E.R. 1294
("[p]ersonal property having no situs of its own, follows the domicile of its
owner"). Thus, any dispute about the subsistence or ownership of the "foreign
copyright-protected work" that Bundy seeks to defend under U.S. copyright law
must be resolved under *English* law, as that is the situs of Bundy, the work, and the

law that created it.[3]  Since the "situs of the property" is not outside the United

Kingdom, the *Moçambique* rule does not apply in the context of this case, and an

English court is free to exercise jurisdiction over Bundy's U.S. copyright claims.

---

[3] And, those subsistence and ownership issues raise many complex copyright issues under English law that English courts are better suited to decide.  For example, resolution of Bundy's copyright claim will require deciding under England's Imperial Copyright Act of 1911, (1) whether Dorothy L. Sayers qualifies as the first copyright owner of the Illustration because she created the underlying pencil drawing of the Illustration and/or because she ordered the Illustration from Scott-Giles; (ii) whether Scott-Giles' inking of a drawing supplied to him by Sayers was sufficiently creative and original to qualify for copyright protection; (iii) whether the drawing would qualify as an "engraving" under English law, copyright in which would be owned by Sayers; (iv) whether Scott-Giles was "employed" by Sayers when he made whatever contribution he made to the Illustration; and (v) whether Sayers' identification as the only copyright owner in the first U.S. edition of *The Divine Comedy* means that she is presumptively the first copyright owner of the Illustration under English law. (*See* 3-ER-445-53.)

Other English copyright law issues involve equitable versus legal title in the Illustration (3-ER-454-57); separation of ownership interests in the Illustration (3-ER-458-62); liability for infringement on the facts presented (3-ER-459); and, given the 70+ years of delay in asserting rights, whether Bundy's claims are barred by acquiescence and laches under English copyright law (3-ER-462-65).

Finally, Bundy invoked English copyright law's "reversion" doctrine below to avoid many of the above problems and claim copyright ownership under English law (2-ER-107-108), and that issue alone raises complex English copyright law issues.  Under English law, whether "reversion"  benefits Bundy depends on whether: (i) C.W. Scott-Giles' contribution to the Illustration qualifies as copyrightable under English law; (ii) if it did, whether Scott-Giles qualified as the original author or one of the original authors; and (iii) if he did qualify with Sayers as one of two original authors, whether he and Sayers were "joint" or "non-joint" authors, because while "joint works" could be subject to reversion under English law, non-joint or "collective" works  could not. *See* England's Copyright Act of 1911, Section 5(2); *Chappell & Co. Ltd. & Others v. Redwood Music Ltd.* [1981] R.P.C. 337 (no reversion under Section 5(2) of the 1911 Act because the

However, even if this Court believes that, notwithstanding *Lucasfilm*, an English court would apply the *Moçambique* rule in a case involving a domestic work, *Lucasfilm* does not preclude an English court from exercising jurisdiction over Bundy's U.S. claims.  Contrary to Bundy's contention, *Lucasfilm* does not dictate that "U.K. courts can only exercise jurisdiction over foreign copyright claims when the validity of the right is not in dispute."  (AOB 17 (emphasis omitted).)  In *Lucasfilm*, the U.K. Supreme Court held that the plaintiff's foreign copyright claims were justiciable *notwithstanding* questions concerning the validity of the plaintiff's U.S. copyright.  *See Lucasfilm* at ¶¶ 102-03 (noting that the validity of Lucasfilm's "claimed copyright in physical helmets and armour…was disputed…because they were said to be functional or utilitarian" and that "at trial the infringement arguments sometimes merged into a subsistence argument").  (2-ER-150.)  This was in part because "the *substantial dispute* has

---

copyrighted musical work at issue was a collective work).  Under England's Copyright Act of 1911, Section 16(3), a "joint work" was "a work produced by the collaboration of two or more authors in which the contribution of one author is not distinct from the contribution of the other author or authors."  A non-joint, or "collective work," on the other hand, involved "any work written in distinct parts by different authors, or in which works or parts of works of different authors are incorporated."  Copyright Act of 1911, Section 35(1)(c).  If, as seems likely, C.W. Scott-Giles inked over a pencil drawing of the Illustration made by Dorothy L. Sayers, the court adjudicating this case will have to determine whether the Illustration is a collective work not subject to reversion under the Copyright Act of 1911, copyright in which would thus remain with Dorothy L. Sayers' Estate.  *See Chappell & Co. Ltd and Others v. Redwood Music Ltd.*, *supra* (finding no reversion of musical work because it was a collective work).

always been about the ownership of the relevant copyrights and their infringement rather than about their subsistence." *Lucasfilm* at ¶ 103 (emphasis added). (2-ER-150.) In other words, as the district court recognized in granting Appellee's motion, "the court in *Lucasfilm* did not hold that jurisdiction can *never* be established when the validity of a copyright is at issue…." (1-ER-23.) To the extent questions of validity bear at all on the justiciability of a foreign copyright law claim involving a domestic work (a question the *Lucasfilm* court did not decide), they do not prevent an English court from adjudicating such claims where the dispute is substantially about other issues, such as ownership. Ownership of the U.K. copyright in the Illustration is a key issue in this case, one that could potentially resolve *both* Bundy's U.S. and U.K. copyright claims.

Only if Bundy clears this hurdle of English law copyright law will the English court have to determine if Bundy satisfied the statutory prerequisites for filing a U.S. copyright infringement suit against "reliance parties" under the URAA. But even this issue is not one of subsistence or validity, but is "purely procedural" and therefore not a bar to justiciability. *Lucasfilm* at ¶ 107 (noting that the requirement of copyright registration does not implicate the "act of state" doctrine precluding justiciability because registration is not a prerequisite to subsistence of a U.S. copyright, but only to filing suit). (2-ER-151-52.) Thus, the "substantial disputes" in this case are not ones involving the validity of Bundy's

U.S. copyright in the Illustration.  To the extent this case does involve such questions, they do not preclude an English court from exercising jurisdiction over Bundy's U.S. claims.  Accordingly, the district court was within its discretion to find the U.K. an adequate alternative forum.[4]

To the extent any doubt remained as to England's adequacy as an alternative forum, the district court adequately addressed such concerns by conditioning dismissal on "a U.K. court's acceptance of jurisdiction over Bundy's claims, including her U.S. copyright claim."  (1-ER-33.)  As set forth in *Bank of Credit and Commerce International (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 247-48 (2d Cir. 2001), on which Bundy relies, "the district court may dismiss on *forum non conveniens* grounds, despite its inability to make a definitive finding as to the adequacy of the foreign forum, if the court can protect the non-moving party by making the dismissal conditional."  All that is required is that the district court "engag[e] in a full analysis of those issues of foreign law or practice that are relevant to its decision" and "closely examin[e] all submissions related to the adequacy of the foreign forum."  *Id.* at 248.  The district court below did exactly

---

[4] The extensive briefing and argument about this one U.K. Supreme Court decision on this one point both below and on this appeal underscores that this action requires resolution of complex issues of English law, which itself strongly favors *forum non conveniens* dismissal as discussed in Section A.2, *supra*.

that and reached a "justifiable belief" that the alternative forum was adequate. *Id.*
(*See* 1-ER 22-24.)  Bundy has not shown an abuse of discretion.

### 3. The District Court Did Not Abuse Its Discretion in Ruling That British Citizen Bundy's Selection of a U.S. Forum Was Entitled to Less Deference.

Bundy's argument that the district court gave insufficient deference to her selection of a California forum (AOB 23-28) lacks merit for several reasons.

First, as the district court observed, Supreme Court authority holds that a foreign plaintiff "deserves less deference" in her choice of forum. *Piper Aircraft*, 454 U.S. at 256.  This Court has applied *Piper* to hold that even a U.S. plaintiff's choice of forum is entitled to less deference if he or she does not reside in the forum. *See Ayco Farms, Inc. v. Ochoa*, *supra*, 862 F.3d at 950.  Bundy's home forum is the United Kingdom, and thus the district court correctly concluded that her decision to sue in California was entitled to less deference.

Second, this is especially true when a foreign plaintiff files suit in the United States for forum shopping purposes, as Bundy did here.  "[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons ... the less deference the plaintiff's choice of forum commands." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d at 694-695.

Bundy filed suit in the United States "to take advantage of more favorable American procedural or substantive rules" involving contingency fee counsel and

discovery. *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000), citing

*Piper*, 454 U.S. at 235. For example, Bundy admitted below that she filed suit in

the California forum to gain access to contingent fee counsel not available to her

for copyright infringement claims in England, and complained that leaving the

U.S. forum would deny her that access, an argument she repeats on appeal.[5] (SER-

115-116; AOB 54-58.) That argument admits to forum shopping. Not only are

such considerations entitled to little weight in the *forum non conveniens* analysis,

as the Supreme Court, this Court, and at least three other circuit courts have held,[6]

---

[5] Further, while Bundy *argued* before the district court that she lacked the financial ability to pursue an action in England, she provided no evidence by which that claim could be evaluated. That failure alone supported rejection of this argument. *See Murray v. British Broad. Corp.*, 81 F.3d 287, 294-95 (2d Cir. 1996). The district court would have been justified in finding it just as likely that Bundy chose a California forum so she could pursue her meritless U.S. copyright claims in the hopes of extracting a settlement from Appellees without having to risk paying attorneys' fees if Appellees refused to acquiesce to her demands. (*See* 3-ER 543-44 (initial demand letter from Bundy's counsel to Nirvana's counsel inviting him to contact her "to discuss a retroactive license and payment" and expressing "hope[] that we can resolve this dispute short of litigation").)

[6] *See Piper Aircraft Co.*, 454 U.S. at 247 (that U.S. law would be preferable to Scottish law for plaintiffs was entitled to little weight in a *forum non conveniens* analysis); *id.* at 256, n.24 ("[T]he deference accorded a plaintiff's choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case."); *Murray v. British Broad. Corp.*, 81 F. 3d 287, 292-95 (2d. Cir. 1996) ("the unavailability of contingent fee arrangements in England is of little weight" in *forum non conveniens* analysis); *Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987) (lack of contingency fees in England should not significantly influence *forum non conveniens* analysis because "[i]f the lack of a contingent fee system were held determinative, then a case could almost never be

when they are the basis for the plaintiff's forum choice, her choice is entitled to less deference. *See Vivendi*, 586 F.3d at 694–95 (that foreign plaintiff sued in the United States "because the United States offers 'proper discovery' and favorable law" was an improper forum shopping purpose that favored dismissal); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015) (where plaintiff's conduct gave rise to an "inference" that she was engaging in forum shopping, the court was entitled to give less deference to her choice of forum).

Further, pursuing in the United States copyright infringement claims requiring extensive third party and other discovery in England would have made more difficult and uncertain Appellees' ability to obtain additional evidence to further refute Bundy's claims of copyright ownership in the Illustration, since it would require the time-consuming and uncertain international discovery procedures of the Hague Convention as described below.[7]  The district court's decision to afford "less deference" to Bundy's choice of forum (1-ER-20-21) was not an abuse of discretion in these circumstances.

---

dismissed because contingency fees are not allowed in most forums"); *Magnin v. Teledyne Continental Motors*, 91 F. 3d. 1424, 1430 (11th Cir. 1996) (lack of contingent fees and right to a jury trial in France did not weigh against *forum non conveniens* dismissal)

[7] *See* Section A. 6., *infra.*

Third, the *Carijano* and *Ravelo* decisions Bundy cites do not require greater deference for foreign plaintiffs' choice of forum or support reversal of the district court's decision. *Carijano* afforded more deference to the plaintiffs' choice of forum because one of the plaintiffs was a California corporation in whose home forum the action was brought. *See Carijano*, 643 F.3d at 1228-29. *Ravelo* involved foreign plaintiffs whom defendants had invited into the forum through agreements that called for them to work in California, and there was no showing that access to proof would be easier in the alternative forum. *Ravelo*, 211 F.3d at 514.

Here, in contrast, there is no domestic plaintiff as there was in *Carijano*. In contrast to *Ravelo*, Appellees have entered into no agreement with Bundy of any sort, let alone one inviting Bundy to work in California. Moreover, the district court made the factual determination that the parties would have easier access to discovery in the United Kingdom than in the United States because of the difficulty, expense, and uncertainty of a U.S. litigant obtaining third party and other discovery abroad. Those differences support the discretion the district court exercised in dismissing Bundy's suit on *forum non conveniens* grounds.[8]

---

[8] In addition to *Carijano* and *Ravelo*, Bundy relies heavily on case law from other circuits, as she did below. The district court did not abuse its discretion by declining to follow non-binding authority in favor of applying the law of this circuit.

26

**4.    The District Court Did Not Abuse Its Discretion in Considering the Evidence Appellees Introduced on the Issue of Copyright Ownership.**

Bundy's arguments that the district court "attached disproportionate weight to 'potential issues' regarding Bundy's copyright ownership" based on evidence Appellees produced with their motion (AOB 28-30) lacks merit for several reasons.

First, Bundy's argument that the district court should have ignored the evidence because it had to accept as true her claim to be "the sole owner of the copyright in the Illustration" (AOB 29) misstates the law. Courts are not "required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n,* 629 F. 3d 992, 998 (9th Cir. 2010) (internal citations and quotations omitted).  Bundy's complaint contained many allegations that were refuted by the exhibits to her complaint, as well as unwarranted deductions and unreasonable inferences as to U.S. law as described in Statement of Facts ("SUF") Section D., *supra*, and the Court was well within its discretion to disregard them.

Similarly, the district court need not have accepted the complaint's legal conclusions.  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). Bundy's claim to own a copyright in a "foreign copyright-protected work" was just

such a legal conclusion, since it required application of U.K. law to the facts concerning creation of the Illustration.

Further, courts may consider attorney declarations on foreign law in ruling on a motion to dismiss. *De Fontrune v. Tofsy*, 838 F.3d 992, 1000 (9th Cir. 2016). Appellees produced two such declarations, one from a British solicitor and the other from a German attorney, who opined on the English and German law issues raised by Bundy's Complaint and the available evidence. (3-ER 444-69, 470-91.) Their testimony raised significant doubts about Bundy's claim of U.K. copyright ownership on the facts alleged. *See supra* Section A. 2 and note 3. Bundy produced no evidence to dispute those foreign law experts' conclusions, or to show that application of U.K. or German law would not be required to resolve the issue of her copyright ownership. Indeed, she conceded that "U.K. law does govern the issue of copyright ownership" (1-ER-26), but argued simply that application of U.K. law would "not [be] particularly difficult," a conclusion the district court properly found unpersuasive. (*Id.*) The district court did not abuse its discretion in considering the unrefuted conclusions of foreign law experts in determining that resolving the issue of Bundy's ownership of the copyright in the Illustration would require the court to interpret and apply foreign laws.

Courts also may consider declarations and other evidence when considering *forum non conveniens* and jurisdiction motions. *See Vivendi SA v. T-Mobile USA,*

*Inc.*, No. C06-152JLR, 2008 WL 2345283, *2-*3 (W.D. Wash. June 5, 2008) aff'd, *586 F. 3d* 689 (granting *forum non conveniens* motion based on declarations submitted with it.) Appellees provided declarations and exhibit evidence to support their motion, including correspondence, drawings, and related documents between purported Illustration creator Scott-Giles and author Dorothy L. Sayers that creates significant doubt about Bundy's U.K. copyright ownership claim as described above. (SER-17-18, 43-44, 47-67.) *See supra* SUF, Section C. Bundy produced no real evidence to refute Appellees' evidence when she opposed Appellees' motion, instead arguing below, as she does on appeal, that the district court should not have considered it.[9] The district court did not abuse its discretion in considering that unrebutted evidence in ruling on the motion to dismiss.

---

[9] Bundy did produce one declaration to oppose Appellees' motion, namely that of Penguin solicitor Nicola Evans, but her testimony contained curious omissions and contradicted Bundy's own complaint and exhibits. More importantly, the Evans declaration underscored the need for investigation and discovery of and from Penguin and other English witnesses and documents as to Penguin's right to use the Illustration, further weighing in favor of resolution of this dispute in the United Kingdom. For example, Evans's declaration acknowledged that *The Divine Comedy* was first published in 1949 (3-ER-360), but did not say when *The Divine Comedy* was first published in the United States. (3-ER-361.) Although she disputes that Penguin was fully functional in the United States in 1949, (3-ER-361-62), Bundy attached to her complaint a Penguin booklet summarizing its worldwide history that states "[a]n American branch of Penguin Books Ltd. was established in 1939," and lists "1.86 million" total book sales by Penguin in 1949, "including U.S.A." (3-ER-539.) Further, Evans contends that Penguin does not claim any right or title in the Illustration "other than the right and license to reproduce and publish it in the context of all editions of*" The Divine Comedy.* (3-

Second, contrary to Bundy's argument on appeal, except for Nicola Evans's equivocal declaration cited above (*see supra* note 10), she did *not* provide controverting evidence on the copyright ownership issue to oppose Appellees' motion to dismiss. The district court therefore could not have considered any such evidence in ruling on Appellees' motion, and could not have abused its discretion in failing to consider evidence Bundy did not produce to oppose that motion.

Third, the district court need not have considered the additional "evidence" Bundy filed with her motion for reconsideration, which she inaccurately claims "settled" the copyright ownership issue, because it was untimely, incompetent, and unpersuasive. (*See* 2-ER-46-48, 3-ER-359-376). Since she could have but did not submit this evidence with her opposition to Appellees' motion to dismiss, the district court could have declined to consider it at all without abusing its discretion. *See Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Trust*, 979 F.3d 1209, 1218 (9th Cir. 2020) (holding that motion for reconsideration may not be used to present evidence that "could reasonably have been raised earlier" and affirming denial of motion for reconsideration affirmed because moving party could have presented evidence earlier but did not); *In re Crystal Waterfalls*, *LLC*, 768 Fed. Appx. 763, 764 (9th Cir. 2019) (court did not violate due process rights by

---

ER-361.) However, her declaration fails to explain how Penguin acquired its purported "right and license to reproduce and publish" the Illustration and does not attach any license agreements between Penguin and C.W. Scott-Giles.

rejecting as untimely evidence that should have been submitted prior to motion for reconsideration).

Fourth, that late-filed evidence, consisting of a brief disclaimer of ownership in the Illustration by the alleged trustee of the Dorothy L. Sayers Trust, did not "settle" the copyright ownership issue. In fact, it did not even address it. It provided no evidence or insight into Scott-Giles and/or Dorothy L. Sayers' actual roles in creating the Illustration.[10] It did not mention, and gave no indication that the declarant knew about, the extensive evidence of Dorothy L. Sayers' contribution to the Illustration Appellees provided to the court below. It did not clarify, for example, (1) whether Dorothy L. Sayers drew the original pencil drawing of the Illustration that Scott-Giles merely inked over, (2) whether Scott-Giles' contribution to the Illustration, whatever it was, was made in a factual setting establishing that it was a work made for hire under U.K. law, or (3) whether the Illustration was a "collective work" under U.K. law that would make it ineligible for reversion by Scott-Giles' estate under U.K. law, as Bundy argued it did below.

---

[10] Although the declarant, Georgia Glover, claimed that the Illustration "was created by C.W. Scott-Giles" and that "Mr. Scott-Giles was never an employee of Ms. Sayers" (2-ER-47), there was no foundation provided for these conclusory assertions by a person living 70+ years after the relevant events.

31

Instead, it only briefly disclaimed a *current* copyright interest in the Illustration by Dorothy L. Sayers' current, unidentified "successors-in-right" (described as the "Sayers Trustees"). The earlier Evans declaration likewise only briefly denied a current copyright interest in the Illustration by *The Divine Comedy* publisher Penguin, even though complaint exhibits show that Penguin continued to exploit the copyright in the Illustration decades after its first publication. (3-ER-532-35; see also 3-ER-360.)

Those declarations gave no indication that Penguin or the Sayers Trustees were shown or had access to the significant evidence of Penguin's ownership and Sayers' creation of the Illustration described in Appellees' motion. They provided no insight into what Penguin or the Sayers Trustees would do or claim if they had that information, yet their current representatives obviously could not make informed decisions about copyright ownership of the Illustration without it.[11] The declarations' short, conclusory statements thus lacked foundation, and the district court did not abuse its discretion in determining that substantial questions remained as to Bundy's copyright ownership that would need to be explored through discovery.

---

[11] Bundy presented no evidence to suggest that Penguin or the Sayers Trustees are in any way prevented from changing their position on ownership once they review relevant evidence, or for any other reason, and asserting copyright ownership rights under U.K. law.

Finally, the fact those third parties may not presently claim rights in the Illustration does not prevent Appellees from disputing Bundy's ownership claims under English law based on Penguin's and Sayers' actions in creating the work in the 1940s, regardless of the positions their successors now take. Bundy cites no principle of U.K. copyright law that prevents Appellees from disputing Bundy's recent claim to ownership of a copyright created under U.K. law, made for the first time in a U.S. court over 70 years after the Illustration was created in England. That is especially true given Evans's failure to produce any evidence that it licensed the Illustration for publication,[12] as well as the significant evidence that Sayers may have principally created the Illustration as described above.[13] And, since copyright ownership will have to be decided under English law to support both the U.S. and U.K. copyright infringement claims, the importance of those factual issues on ownership will have to be evaluated under U.K. copyright law too.[14] Thus, Bundy's untimely "evidence" only further supported the dismissal of

---

[12] *See supra* note 10.

[13] The declaration from a purported "agent" of the Sayers Trustees does not mention, and gives no indication that the declarant or the Sayers Trustees knew about the extensive evidence of Dorothy L. Sayers' contribution to the Illustration at issue, including a series of letters and drawings Sayers sent to Scott-Giles in 1946 that raise doubts about Scott-Giles' contributions to and copyright ownership in the Illustration. (*Cf.* 2-ER-47 with SER-18-19, 44, 47-67.)

[14] Moreover, Plaintiff's submission of a declaration from yet another witness located in the United Kingdom merely underscores that "material and important

this U.S. action in favor of a proceeding in the U.K. to decide these issues of U.K. law.

### 5. The District Court Did Not Abuse Its Discretion in Ruling That Public Interest Factors Favor a U.K. Forum.

Bundy's arguments that the district court abused its discretion in ruling that public interest factors favored dismissal (AOB 30-40) lack merit for several reasons.

First, Bundy's argument that her "main claims turn on U.S. copyright law" (AOB 31) is an inaccurate and empty mischaracterization. Bundy asserts copyright claims under U.S., U.K., and German law. Nothing in the complaint distinguishes any of these as the "main" claim or claims. In any event, both Bundy's U.S. and U.K. copyright claims turn on whether she owns a valid copyright in the Illustration under U.K. law as described above. *See supra* SUF, Section 2.B. This threshold question raises several complex issues of U.K. law, *see supra* SUF Section 2.C., and is potentially dispositive of Bundy's U.S. and U.K. copyright claims (in which case, the court need not consider or apply U.S. copyright law at all).

Further, in contrast to the complex foreign law issues Bundy's complaint raised as described above, the U.S. copyright law issues easily dispensed with.

witnesses may and likely do reside in the U.K.," as the district court reasonably found. (1-ER-28.)

Bundy does not dispute that she never filed a U.S. copyright registration for the Illustration and failed to comply with other procedural requirements to create a copyright in a U.S. work under former U.S. copyright law as described above. The Illustration thus has been in the public domain in the United States for more than 70 years.[15]

Since Bundy could not claim a U.S. copyright in the Illustration, Bundy's complaint instead alleged ownership of a "foreign copyright-protected work" whose U.S. copyright was "restored" by the URAA in 1996. (3-ER-505-06.) However, Bundy's U.S. copyright claim fails under the URAA because she did not comply with the URAA's procedural requirements before filing suit.[16]

---

[15] Bundy's complaint attempted to dispute this by citing case law holding that *foreign* publication of a foreign work without a copyright notice did not inject it into the public domain in the United States. (*See* 3-ER 505-06.) But the very case she cited holds that "a publication of a work *in the United States* without the statutory notice of copyright fell into the public domain, precluding forever any subsequent copyright protection of the published work." *Twin Books Corp. v. The Walt Disney Co*, 83 F.3d 1162, 1166 (9th Cir. 1996) (emphasis added).

[16] It also is unclear as a factual matter whether the URAA applies to the Illustration at all. The URAA only applies to "restored works," and its definition of "restored works" excludes works published in the United States within 30 days after their initial foreign publication. *See* 17 U.S.C. § 104A(h)(6)(D) (defining "restored work"). Here, evidence indicates that the U.S. publication of *The Divine Comedy* may have occurred within 30 days of its initial U.K. publication in 1949 as described above. If it did, it is specifically excluded from the URAA. And if the URAA does not apply, the Illustration remains in the public domain in the U.S. and no copyright infringement claim can be based on it under U.S. law. *Id.*

Nirvana and the other Appellees qualify as a "reliance parties" under the URAA because they or their predecessors or licensors continuously used the Illustration on the Nirvana t-shirt since 1989, years before the enactment of the URAA.[17] 17 U.S.C. § 104A(h)(4). A URAA copyright infringement action involving the Illustration can only be commenced against "reliance parties" like Appellees after a Notice of Intent to Enforce the copyright in the Illustration ("NIE") has either been filed with the Copyright Office or served on the reliance parties directly. 17 U.S.C. § 104A(h)(4).

Bundy never filed nor served the NIE the URAA requires, and thus did not comply with the statutory prerequisites for filing suit. (SER-43, 77-85.) Even if Bundy's February 19, 2021 demand letter attached to her complaint were mischaracterized as an NIE (which it should not be because it did not include all of the information the statute requires, *cf.* 3-ER-541-545, 555-558, and 562-64 with 17 U.S.C. § 104A(e)(2)(B)), Bundy did not wait twelve months after serving the

---

[17] More precisely, Defendant Nirvana, L.L.C. and its predecessors Nirvana Inc. and the Nirvana partnership continuously exploited that merchandise beginning in 1989. (3-ER-492-94.) As a successor who maintained continuous sales begun by its predecessors, Nirvana qualifies as a "reliance party" under the URAA. *See Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-160 (2d Cir. 2007) (successor entity could acquire "reliance party" status if it continued sales of allegedly infringing goods begun by its predecessor). Similarly, defendant Live Nation Merchandise, LLC ("Live Nation") qualifies as a "reliance party" under the URAA because it is a "licensee" of Nirvana. 17 U.S.C. § 104A(h)(4). (*See* 2-ER 37.) To the extent the other defendants engaged in any of the acts complained of, it was in their capacity as agents of Nirvana and Live Nation.

letter to file suit based on any restored copyright in the Illustration, or limit her infringement claim to infringements occurring 12 months after the NIE was sent, as the URAA requires. 17 U.S.C. § 104A(d)(2)(A). Bundy never claimed that she did, nor otherwise disputed any of these fatal problems with her complaint below. If Bundy's February 19, 2021, letter qualified as an NIE, Bundy properly could only have filed suit and could only recover damages for infringements that occurred after February 19, 2022. (3-ER-504.) Since Appellees voluntarily stopped selling the "Circles of Hell" t-shirt in early 2021 (3-ER-494, 561), Bundy's claims fail.

Bundy's URAA copyright infringement claims also are impossible under the URAA, because a copyright owner can ***never*** sue for copyright infringement based on the exploitation of "existing derivative works," and can only seek reasonable compensation for uses that continue more than 12 months after service of an NIE as described above. 17 U.S.C. § 104A(d)(3). The Nirvana "Circles of Hell" t-shirt is a derivative work consisting of an original combination of the Nirvana name, the "Circles of Hell" image, and original text on the back. (*Cf.* 3-ER-503-04, 3-ER-523.)[18] However, an English court will not need to decide these issues, because

---

[18] "A 'derivative work' is a work based upon one or more preexisting works … such as a[n] … art reproduction … or any other form in which a work may be recast, transformed or adapted." 17 U.S.C. §101 (definition of "derivative work"). T-shirts that reproduce art are derivative works pursuant to this definition,

Appellees elected to stop sales within twelve months, and are therefore immune from liability under the URAA. *See* 17 U.S.C. § 104A(d)(2)(A).

Bundy's U.S. "copyright management information" claim is also barred for lack of a copyright protectable under U.S. law by the URAA or otherwise. It is also barred for the following independent reasons: (1) there was nothing improper in Nirvana claiming copyright in a derivative t-shirt that included a public domain image; (2) the Scott-Giles references in *The Divine Comedy* were not copyright references because copyright was instead always claimed by Dorothy L. Sayers; and (3) the Illustration itself never included a copyright notice, and none was removed from it.

Bundy thus is asserting U.S. copyright infringement claims that are meritless on their face under U.S. law, together with English and German copyright infringement claims that raise complex issues of foreign law. The English law issues go to the heart of both the English and U.S. copyright infringement claims and could potentially resolve both claims without any need to ever apply U.S. copyright law.

---

especially if they are combined with other elements that "recast, transform or adapt" them. 17 U.S.C. § 101 (definition of "derivative work"); *Gaylord v. United States*, 777 F.3d 1363, 1370 (Fed. Cir. 2015) (copyright owner negotiated license for "derivative works incorporating" the artwork in dispute "with a per unit royalty of revenue on t-shirts…"); *United Feature Syndicate, Inc. v. Koons,* 817 F. Supp. 370, 382 (S.D.N.Y. 1993) (artist licensed artwork for use in "T-shirts, calendars and other derivative works").

A U.K. court obviously would be more familiar with the governing English copyright law that will determine the threshold issues of copyright subsistence and ownership. Such familiarity is especially important in this action because of the complex set of facts from which copyright ownership must be determined and the limited English case law available to aid in that determination.

The district court did not abuse its discretion in holding that the need to apply English or German law to all of Bundy's claims favored dismissal in these circumstances. *See Piper Aircraft*, 454 U.S. at 260 n.29 (collecting cases holding that the need to apply foreign law favors dismissal for *forum non conveniens*); *Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001) (noting that "[t]he governing law factor weighs especially heavily in favor of dismissal" and affirming *forum non conveniens* dismissal in part because of the need to apply German law to the dispute).

Third, the respective interests of the forums favored a finding of *forum non conveniens* here. The weak nature of Bundy's U.S. copyright infringement claims as described above means that the local California interest in the present suit is limited. California has no interest in resolving U.K. or German copyright disputes. The United Kingdom's interest in determining the copyright ownership of a work created by one or more British subjects in the U.K., by contrast, is significant. The district court did not abuse its discretion in ruling that this factor favored dismissal,

or alternatively ruling that even if this factor were neutral, it was insufficient to deny dismissal because it "would not alter the overall balancing of the public interest factors." (1-ER-9.)

This is so regardless of whether this Court accepts Bundy's invitation to resolve what she calls an intra-circuit split on whether the district court should balance the different forums' respective interests in the litigation. (AOB 35-36.)[19] While Appellees believe that weighing respective forum interests is the better way to evaluate the public interest factors relevant to a *forum non conveniens* analysis, and that appears to be the trend of more recent Ninth Circuit authority as shown below, this Court need not decide that issue to affirm the district court decision here.

On many occasions, this Court has balanced competing interests, including the burden on local courts and juries, to hold California's interest in a dispute insufficient to maintain a suit in California. For example, *Ayco Farms, Inc. v. Ochoa,* 862 F.3d at 951, noted that although California had some interest in the dispute, it "has an insufficient interest in the case to justify the significant burden on a California jury." *Ranza v. Nike, Inc*., 793 F.3d at 1078-79, balanced Oregon's and the Netherlands' respective interests in a dispute to conclude that public

---

[19] Of course, one appellate panel cannot overrule another, and Bundy's request is therefore procedurally improper.

interest factors favored the Netherlands because Netherlands law would govern. *Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d at 696, weighed respective forum interests and concluded they favored dismissal of the U.S. action because "any local interest in this case… is slight and does not exceed… the interest other [European] forums have in the adjudication of this controversy." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001), weighed respective forum interests and concluded that Arizona residents' "slight" interest in the parties' dispute did not justify the burden on local courts and juries, including the costs of resolving a dispute largely unrelated to the forum, and thus that public interest factors favored dismissal on *forum non conveniens* grounds. The district court's ruling in this case was consistent with the above authorities and "did not demonstrate the sort of "clear abuse of discretion" that warrants reversal." *Lueck v. Sundstrand Corp.*, 236 F.3d at 1147.

Fourth, the district court did not abuse its discretion in finding that relative judicial congestion favors dismissal of this action. Statistics from the Central District of California and courts in England and Wales showed that Bundy would get to trial faster in the United Kingdom (Lee Decl. ¶ 16; Exs. 6 and 7; 2-ER-198-210), as the district court noted (1-ER-26-27). Bundy eventually conceded below that the district court's conclusion on this issue was correct because "trial appears to be speedier in the U.K. than in this district." (SER-114.) Her present efforts to

reargue again issues she previously admitted (AOB 40)—based on new "evidence" that was not presented below and for which she cites no source—should be disregarded.

The district court did not abuse its discretion in finding that public interest factors favored dismissal on this record.

### 6. The District Court Did Not Abuse Its Discretion in Ruling that Private Interest Factors Favored an English Forum.

Bundy's arguments that the district abused its discretion in ruling that private interest factors favored dismissal (AOB 41-54) lack merit for many reasons.

#### a. Residence and Convenience of Parties and Witnesses.

Bundy, publisher Penguin Books Ltd., Dorothy L. Sayers' successor-in-interest, Barbara Reynolds' successor-in-interest, The Dorothy L. Sayers Society, and Defendant Live Nation's U.K. employees are all parties or third-party witnesses located in England who were shown to have or likely have information and/or documentation relevant to copyright ownership and alleged infringement in the United Kingdom and Germany. (SER-23-25.) There is no basis for Bundy's complaint that some of these witnesses are, as yet, unidentified or that the extent of their relevant knowledge has not yet been discovered. "The proponent of a *forum non conveniens* dismissal is not required to identify potentially unavailable witnesses in exact detail." *Carijano*, 643 F.3d at 1231; *see also Piper Aircraft Co.*,

42

454 U.S. at 258 ("[Defendants] have moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview. Requiring extensive investigation would defeat the purpose of their motion.").

It would be less expensive and more convenient to bring these U.K. resident witnesses to a trial in the United Kingdom than it would to bring them to a trial in California. Further, U.K. witnesses can be compelled to testify in England, while they cannot be compelled to travel to the United States for such purposes. (SER-25-26, 45.)[20] The district court did not abuse its discretion in determining that the location of these parties and witnesses, and the district court's lack of subpoena power over most of them, favored resolution of this dispute in England.

Bundy's argument that Appellees did not describe the importance of these witnesses and the information they possessed (AOB 44) is incorrect. Appellees described precisely what evidence could be expected from these witnesses, and why their testimony was important. (SER-25-26.)

---

[20] The only significant U.S. connection to this action is that the Defendant limited liability companies (but not all of their employees) reside in California and some, but not all, of the alleged infringement occurred here. The district court did not abuse its discretion in finding that these factors did not tilt the balance toward retaining jurisdiction because these witnesses have nothing to do with the overriding copyright ownership issues and Defendants are willing to have this dispute resolved in a U.K. court and to submit to discovery there. (3-ER-494.)

Bundy's argument that "all Defendants" reside in this forum ignores the fact that many Appellee employees with knowledge of allegedly infringing European sales are located in England. (3-ER-496-497.) It also fails to acknowledge that what the district court reasonably called "material and important" witnesses, that is, witnesses with knowledge concerning the most significant and factually disputed issues, are located in England. (1-ER-12-13, 28-29.)

Bundy's argument that Appellees did not show the "unavailability" of European parties or witnesses because they technologically could be interrogated remotely, is unpersuasive. That witnesses can, in theory, be deposed or give testimony remotely does not meaningfully favor reversal of the district court's order; if it did, no *forum non conveniens* motion related to any other technologically modern country could ever be granted based on witness unavailability. If anything, the availability of remote examination methods weighs just as much in favor of dismissal of this U.S. action so that this English law-centered dispute can be resolved in the United Kingdom. The U.S. defendants can be remotely examined from the United Kingdom just as easily as English witnesses can be remotely examined here. Further, witness convenience remains an important factor because in-person deposition and trial testimony is superior to remote testimony for evaluating demeanor and determining truth.

**b.** **Access to Physical Evidence and Other Sources of Proof.**

In asserting that the district court abused its discretion by finding that the access-to-evidence factor weighed in favor of dismissal, Bundy mischaracterizes both the legal standard and the record below. "The Supreme Court and Ninth Circuit have rejected the notion that evidence in the alternative forum must be identified with a high degree of specificity." *Herbert v. VWR Int'l, LLC*, 686 Fed. Appx. 520, 521 (9th Cir. 2017) (citing *Piper Aircraft Co.*, 454 U.S. at 258 and *Carijano*, 643 F.3d at 1231). Here, Defendants identified a number of documents that may bear on the issue of Bundy's ownership of the U.K. copyright in the Illustration and the timing of its U.S. publication, including documentation of the pencil drawings Sayers created for *The Divine Comedy*, any agreement between Scott-Giles and Sayers concerning the copyright in the Illustration, and evidence of when Sayers' translation was first published in the U.S. (SER-25-26.) The fact that Plaintiff submitted a declaration from Penguin claiming it conducted a diligent search and found no such documents says nothing about whether relevant documents may be in possession of other witnesses located in the U.K., including Sayers's and Reynolds's successors-in-interest and The Dorothy L. Sayers Society, third parties over which Appellees have no control. And, as the district court correctly observed, even if some evidence may be located outside the forum in Illinois, the fact remains that material and important evidence is likely located in

45

England.[21]  The district court "did not abuse its discretion by drawing illogical or implausible conclusions from the record" regarding the probable existence of evidence in England.[22]  *Herbert*, 686 Fed. Appx. at 522.

It obviously would be easier and less expensive to obtain witness testimony and documents from British residents and entities in a U.K. legal proceeding than it would be in this U.S. action, if it could be obtained in this action at all.  Obtaining in U.S. litigation discovery from third parties in England is a difficult, time-consuming, and expensive process with an uncertain result.  It requires that parties follow discovery procedures laid out in the *Hague Convention for the Taking of Evidence Abroad in Civil and Commercial Matters*, a multilateral convention to

---

[21] Bundy relies on a "research guide" she purportedly obtained from the Marion E. Wade Center at Wheaton College listing a number of Sayers-related documents in its possession.  (AOB 74.)  However, according to the guide, it contains only "letters to and from Sayers, as well as essays, reviews, talks, and articles by her." (2-ER-166.)  Nothing in the guide suggests the Wade Center obtained Sayers's drawings or contracts.  Moreover, the guide does not indicate the extent to which materials it obtained from Sayers's son's estate, Reynolds's estate, or the Dorothy L. Sayers Society represent those entities' complete archives.  The fact that the collection apparently does not include Sayers's drawings or written agreements suggests that the Wade Center's collection is not in fact complete.  Thus, the only way Appellees could obtain such materials would be to seek them abroad.

[22] For this reason, *Neelon v. Bharti*, 596 Fed. Appx. 532 (9th Cir. 2014), on which Bundy relies, is inapposite.  There, neither the defendant nor the court identified any specific documents, or even categories of documents that may be located abroad.  *See id.* at 533, 534.  Thus, there was no support for the district court's conclusion in that case that "most documentary evidence will have to be collected and shipped from" the alternative forum.  *Id.* at 533.

which the U.S. and U.K. are both signatories (the "*Hague Evidence Convention*").
*See* Fed. R. Civ. Proc. 28 (b);  23 U.S.T. 2557, T.I.A.S. No. 7444, viewable at
https://www.hcch.net/en/instruments/conventions/full-text/?cid=82.)  Under this
Convention, Appellees would first need to ask this Court to issue a Hague
Evidence Convention-compliant Letter Rogatory for written testimony, and Letter
of Request for documents to the Central Authority for the United Kingdom to
request the taking of such evidence. *Hague Evidence Convention*, *supra*.

Once those Letters are obtained, Appellees would need to initiate separate
proceedings in England pursuant to the U.K's "Evidence (Proceedings in Other
Jurisdictions) Act of 1975, 1975 Chapter 34 (the "U.K. Evidence Act"), to seek an
order to permit the taking of the evidence identified in the Letters.  *See U.K.*
*Evidence Act*, available at
https://www.legislation.gov.uk/ukpga/1975/34#:~:text=An%20Act%20to%20make
%20new,effective%20throughout%20the%20United%20Kingdom.  (3-ER-466-
469.)  Appellees could not undertake third-party discovery in England except to the
extent that the English Court issued an order permitting it.  U.K Evidence Act.  (3-
ER-466-69)

The nature and extent of the evidence that could be obtained through this
proceeding is uncertain.  English Courts will reject a Letter of Request that seeks
general, rather than specific, disclosure of relevant documents, and will only

compel a witness to produce "the particular documents specified in the order." That phrase is construed strictly; the documents sought in the Letter of Request must be described precisely and as individual documents, rather than as a type or class. U.K. Evidence Act Sec. 2(4); *Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.* [1978] A.C. 547 at 609, 635, 644; *Panayiotou v. Sony Music* [1994] Ch. 142. The taking of all such evidence is presided over by a barrister or solicitor. CPR 34.18(1).

In contrast, it would be simpler, faster, and less expensive to obtain evidence from British third parties in an English proceeding under the U.K.'s domestic disclosure laws and rules. (3-ER-469.) The district court did not abuse its discretion in so holding.

### c. Enforceability of British Judgment.

California generally enforces foreign judgments that are issued by impartial tribunals that afford due process. *See* Cal. Civ. Proc. Code §1716(a)–(d). English judgments easily meet this standard, and are routinely enforced in California for this reason. *See, e.g.*, *In re Hashim*, 213 F.3d 1169 (9th Cir. 2000) (English judgment enforceable in U.S. bankruptcy proceedings); *Society of Lloyd's v. Blackwell*, 127 Fed. Appx. 961 (9th Cir. 2005) (English procedure comported with American standards of due process, and thus English judgments were properly enforceable under California law). Other circuits hold similarly. *See Soc'y of*

*Lloyd's v. Turner,* 303 F.3d 325 (5th Cir. 2002); *Soc'y of Lloyd's v. Ashenden,* 233 F.3d 473 (7th Cir. 2000).

Bundy's argument that this factor must favor her because this procedure would require her to initiate an enforcement proceeding in California (AOB 52) is unpersuasive. Accepting that argument would effectively mean a *forum non conveniens* motion involving a domestic defendant could never be granted, since nearly all foreign judgments in such cases would require initiation of a second proceeding in California. That is clearly not the law. *See, e.g.*, *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664, 666-67 (9th Cir. 2009) (holding that district court did not err in holding that enforceability-of-judgment factor weighed in favor of American defendants where Mexican judgment would be enforceable in the United States).

Bundy's final argument that California would not enforce an English judgment that included injunctive relief (AOB 52-54) lacks merit for at least two reasons. First, California law would recognize such a judgment based on principles of comity, as the district court correctly determined. *See* Cal. Civ. Proc. Code § 1723 (allowing enforcement of judgments beyond money judgments on principles of comity); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06, 1213 (9th Cir. 2006) (recognizing potential enforceability of a French judgment that included injunctive relief and a

monetary penalty for failure to comply with the injunction). Second, Bundy's "injunctive relief" argument is a red herring, because she can never obtain injunctive relief in the United States on the claims stated. Appellees voluntarily stopped selling the allegedly infringing merchandise after learning of Bundy's complaints and do not plan to resume such sales, as set forth in declarations submitted by Appellees below. (3-ER-494.) Further, to the extent Bundy's U.S. copyright claims rely on the URAA, Bundy could ***never*** obtain injunctive relief because Nirvana's "Circles of Hell" t-shirt qualifies as an "existing derivative work" and Appellees are "reliance part[ies]" as described above, and the URAA expressly precludes injunctive relief in such circumstances. *See* 17 U.S.C. § 104A(d)(3) (authorizing reliance parties to continue to exploit a derivative work for the duration of the restored copyright if the reliance party pays reasonable compensation to the copyright owner). Any injunctive relief available on the English and German copyright law claims, meanwhile, would apply to and be enforceable in England and Germany, and thus would not involve a U.S. court or U.S. judgment.

**d.    The District Court Did Not Abuse Its Discretion in Finding the "Other Practical Problems" Factor Neutral.**

Bundy's arguments that her desire to join unidentified third parties and inability to obtain contingency counsel in England weigh against dismissal (AOB 54-58) lack merit, and the district court did not abuse its discretion in so ruling.

In opposing Appellees' motion, Bundy did not identify a single "additional U.S. infringer" she intends to join in this action.[23]  In light of the "speculative character" of the prospect of joining other alleged infringers, "the district court did not abuse its discretion in attaching little weight to it." *Koschel v. Bd. of Trustees of Calgary Bd. of Educ. Sch. Dist. No. 19*, 61 Fed. Appx. 508, 509 (9th Cir. 2003).

Further, U.S. law does not require, and in fact does not contemplate, that an alleged rights owner can sue all alleged U.S. infringers in a single U.S. legal proceeding.  Such efforts violate Rule 20(a)(2) of the Federal Rules of Civil Procedure, which contemplates only suits against related defendants consistent with judicial economy.  *Cell Film Holdings LLC v. Acosta*, No. 2:16-cv-01853-JAD-VCF, 2017 WL 5895130, *3 (D. Nev. Nov. 29, 2017) (attempts to join all

---

[23] In moving for reconsideration, Bundy for the first time identified two alleged "licensees" of Appellees.  However, the district court was within its discretion to disregard this evidence given that Bundy could have raised it in opposition to Appellees' motion, but did not do so, and in light of evidence submitted by Appellees that they did not license anything to either entity Bundy identified.  (2-ER-37-39.)

copyright infringement defendants nationwide in a single copyright infringement action rejected because doing so violated Rule 20(a)(2) and was contrary to judicial economy). Instead, such hypothetical third-party defendants, like most alleged infringers, can and should be sued in separate actions in jurisdictions where they are subject to personal and subject matter jurisdiction consistent with judicial economy.

Similarly, Plaintiff's claim that she will face financial hardship because she will have difficulty retaining English counsel was both factually unsupported[24] and insufficient to deny a *forum non conveniens* dismissal as described at length above. This Court and courts from at least three other circuits have rejected it. *See Vivendi*, 586 F. 3d at 694–95; *Murray v. British Broadcasting Corp*., 81 F. 3d 287, 292-95 (2d. Cir. 1996); *Coakes v. Arabian American Oil Co*., 831 F. 2d 572, 576 (5th Cir. 1987); *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1430 (11th Cir. 1996).

## B. There is No Basis for Reassignment on Remand

Bundy's final argument that this case should be reassigned on remand to maintain the "appearance of justice" (AOB 58-60) should also be rejected for several reasons.

---

[24]*See supra* note 6.

First, the district court did not abuse its discretion in its rulings, and this Court should affirm them.[25]

Second, absent bias Bundy has not even argued exists, reassignment is proper only in "unusual circumstances," such as when a district court demonstrates "adamance" in rejecting this Court's rulings in the same action. *Miller v. Sawant*, 18 F.3d 328, 343-44 (9th Cir. 2021); *see also McSherry v. City of Long Beach*, 423 F.3d 1015, 1023 (9th Cir. 2005) (rejecting the "extraordinary measure of reassignment"). Here, there have been no reversals, and there should be none because the district court's rulings are correct. There is therefore no showing that the district court has rejected the guidance of this Court, nor that it would do so on remand. Nor has Bundy demonstrated any other "unusual circumstances" that would justify the "extraordinary measure of reassignment."

Third, Bundy's unhappiness that the district court did not "correct its errors" when it declined to accept various re-arguments Bundy made in her motion for

---

[25] Even if the Court determines that the district court did abuse its discretion in dismissing Bundy's complaint on *forum non conveniens* grounds, it should remand with instructions to the district court to consider the alternative relief requested in Appellees' motion, i.e., dismissal of Bundy's U.K. and German copyright claims. As Appellees argued below, these claims substantially predominate over Bundy's U.S. copyright claim and the district court may therefore decline to exercise jurisdiction over them. The district court never reached this argument in ruling on Appellees' motion since it dismissed the entire complaint for *forum non conveniens* (1-ER-33.) The district court should be directed to consider and rule on Appellees' alternative request.

reconsideration below does not support reassignment. Bundy's re-arguments themselves violated applicable rules and case law which prohibited them, and the district court properly could have refused to consider them at all as described above. The fact that it nevertheless reconsidered them on the merits demonstrates fairness and impartiality that weighs against reassignment.

## CONCLUSION

The district court's dismissal of Bundy's complaint on *forum non conveniens* grounds should be affirmed for all the reasons described above.

August 17, 2022     RIMON, P.C.

           s/ Mark S. Lee

           *Attorneys for Defendants—Appellees*
           Nirvana L.L.C.


August 17, 2022     KATTEN MUCHIN ROSENMAN LLP

           s/ Zia F. Modabber

           *Attorneys for Defendants—Appellees*
           Live Nation Merchandise, LLC, Merch Traffic
           LLC, and Silva Artist Management, LLC

**FILER'S ATTESTATION**

I, Mark S. Lee, hereby attest that Zia F. Modabber concurs in the content of the above Appellees' Responsive Brief and has authorized its filing.

s/ Mark S. Lee

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32 of the Federal Rules of Appellate Procedure, and Circuit Rule 32-1, I certify that this Brief is proportionately spaced, has a typeface of Times New Roman, 14 point, and contains 12,923  words, including footnotes, but excluding this Certificate of Compliance, the Table of Citations, the Table of Contents, Table of Authorities, the Corporate Disclosure Statement, Addendum, and the Certificate of Service.  This brief was created in Microsoft Word, and I have relied on that software's word-count feature to calculate the word count.

August 17, 2022                    RIMON, P.C.

*s/Mark S. Lee*
*Attorneys for Defendants—Appellees*
Nirvana L.L.C.

56

## CERTIFICATE OF SERVICE

I certify that on August 17, 2022, this Appellees' Responsive Brief of
Defendants-Appellees Nirvana L.L.C. was electronically filed using the CM/ECF
system. All parties' counsel are registered CM/ECF users and will be served by
the CM/ECF system.

August 17, 2022                     RIMON, P.C.

                                    *s/Mark S. Lee*
                                    *Attorneys for Defendants—Appellees*
                                    Nirvana L.L.C.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-56305

I am the attorney or self-represented party.

**This brief contains** | 12,923 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [　　　　].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Mark S. Lee | **Date** | August 17, 2022

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/2018*