Case No. 21-56305

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

## JOCELYN SUSAN BUNDY,

Plaintiff/Appellant,

v.

## NIRVANA L.L.C.; LIVE NATION MERCHANDISE, LLC; MERCH
## TRAFFIC LLC; SILVA ARTIST MANAGEMENT, LLC,

Defendants/Appellees.

---

On Appeal from

the United States District Court for the Central District of California

Case No. 2:21-cv-03621-DSF (MAA)

Honorable Dale S. Fischer

---

## APPELLANT'S REPLY BRIEF

---

Inge DE BRUYN (SBN 327912)
MODO LAW, P.C.
4218 Via Padova
Claremont, CA 91711
Telephone: (323) 983-2188
Email: inge.debruyn@modo-law.com

*Attorney for Plaintiff-Appellant.*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

DEFENDANTS' STATEMENTS OF THE CASE AND OF THE FACTS
CONTAIN NOTABLE INACCURACIES ............................................................2

1. Plaintiff Does Not Rely On English Copyright Law To Support Her
   U.S. Copyright Infringement Claim...............................................................3

2. There Is No Controversy Regarding Plaintiff's Copyright Ownership
   That Needs To Be Resolved Under English (or German) Law Based
   On Documents And Witnesses In England.....................................................4

3. The Illustration Is Not In The U.S. Public Domain ....................................7

ARGUMENT ......................................................................................................10

1. A *Forum Non Conveniens* Dismissal May Not Be Used As A
   Shortcut To Decide A Plaintiff's Claims On Their Merits ........................10

   1.1. Defendants did not file a motion to dismiss Plaintiff's
        Complaint on the merits ...................................................................10

   1.2. Plaintiff has stated claims under U.S. copyright law upon
        which relief may and should be granted ..........................................12

2. The District Court Correctly Found That, Under *Lucasfilm,* An
   English Court Will Not Exercise Jurisdiction Over U.S. Copyright
   Infringement Claims When The Validity Of The U.S. Copyright Is
   At Issue ........................................................................................................13

3. The District Court Improperly Disregarded Plaintiff's Evidence of
   Authorship and Copyright Ownership.........................................................18

   3.1. The District Court abused its discretion by disregarding the
        Sayers Trustees Declaration on reconsideration..............................18

   3.2. The District Court abused its discretion by not viewing the
        evidence in the light most favorable to Plaintiff.............................21

4.    The District Court Abused Its Discretion By Disregarding Plaintiff's
      New Evidence Of Ongoing Infringement In The U.S. ............................22

5.    No Precedent Supports Dismissal For *Forum Non Conveniens*
      Where The Allegations Concern Violations Of U.S. Laws By
      California Residents Resulting From Actions In California And
      Where Defendants Are Sued In Their Home Forum ................................24

6.    The District Court Erred In Dismissing the Case Absent A Finding
      That Trial In This Forum Would Result In Such Oppressiveness and
      Vexation Of The Defendants As To Be Out Of All Proportion To
      Plaintiff's Convenience............................................................................26

CONCLUSION ......................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Ayco Farms, Inc. v. Ochoa*,

862 F.3d 945 (9th Cir. 2017)........................................................25, 26, 27, 28

*Bank of Credit and Commerce v. Bk. of Pakistan*,

273 F.3d 241 (2d Cir. 2001)........................................................................19

*Carijano v. Occidental Petrol Corp.*,

643 F.3d 1216 (9th Cir. 2011)........................................................29, 30, 31

*Cheng v. Boeing Co.*,

708 F.2d 1406 (9th Cir. 1983)........................................................................29

*Coastal Transfer Co. v. Toyota Motor Sales, U.S. A.,*

833 F.2d 208 (9th Cir.1987)........................................................................20

*Cosmetic Ideas, Inc. v. IAC/InterActiveCorp*,

606 F.3d 612 (9th Cir. 2010)........................................................................4

*Feist Publications v. Rural Telephone Service Co.*,

499 U.S. 340 (1991) ........................................................................14

*Hisey v. Qualtek U.S., LLC*,

No. 16-13477 (11th Cir. Oct. 9, 2018) ........................................................15

*Iragorri v. United Techs. Corp.*,

274 F.3d 65 (2d Cir. 2001)........................................................................28

*Lucasfilm Ltd. v. Ainsworth*

[2011] UKSC 39.......................................................................passim

*Martinez v. Bloomberg LP*,

740 F.3d 211 (2d Cir. 2014)...........................................................23

*Mills v. Davis*,

53 F. App'x 480 (9th Cir. 2002)....................................................20

*Murphy v. Schneider Nat'l, Inc.*,

349 F.3d 1224 (9th Cir. 2003)......................................................23

*Murray v. British Broadcasting Corporation*,

81 F.3d 287 (2d Cir. 1996)............................................................15

*Optronic Techs. v. Ningbo Sunny Elec. Co.*,

20 F.4th 466 (9th Cir. 2021)..........................................................22

*Ranza v. Nike, Inc.*,

793 F.3d 1059 (9th Cir. 2015)...................................25, 27, 28, 29

*Ravelo Monegro v. Rosa*,

211 F.3d 509 (9th Cir. 2000)..................................................29, 30

*Ruhrgas AG v. Marathon Oil Co.*,

526 U.S. 574 (1999) ......................................................................10

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,

549 U.S. 422 (2007) ......................................................................10

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,

    24 F.3d 1088 (9th Cir. 1994)...........................................................................13

*United States v. Hinkson*,

    585 F.3d 1247 (9th Cir. 2009) (en banc).......................................................22

*Vivendi SA v. T-Mobile USA Inc.*,

    586 F.3d 689 (9th Cir. 2009).............................................................25, 27, 28

**Statutes**

17 U.S.C. § 104A ...........................................................................................8, 11

17 U.S.C. § 1202 ...................................................................................................3

17 U.S.C. § 501 .....................................................................................................3

17 U.S.C. §104A .................................................................................................9, 17

17 U.S.C. §411(a)..................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b).........................................................................................8, 12

Fed. R. Civ. P. 56 .............................................................................................8, 12

# INTRODUCTION

Defendants' entire argument, here and in the proceedings below, to get this case dismissed for *forum non conveniens* centers on two allegations:

(i)     that the Court, in its analysis, may simply disregard Plaintiff's U.S. copyright infringement claims and other violations of U.S. copyright law because those claims are supposedly meritless "on their face" (Answering Brief at 34-38);

(ii)     that there is a controversy about Plaintiff's copyright ownership that would require the application of English and German law and access to potential documents and witnesses in the UK (Answering Brief at 27-34).

Both allegations are patently false. More importantly, neither one should have guided the District Court's analysis. *Forum non conveniens* is a non-merits ground for dismissal; it involves an evaluation of the convenience of the chosen forum, not a cursory assessment of the legal merits of a plaintiff's claims.

Plaintiff has properly alleged ownership of a valid U.S. copyright in her Complaint. Under the "act of state doctrine," the validity of a U.S. copyright can only be decided by a U.S. court. If any superficial challenge to a foreign work's ownership would be sufficient to have a case dismissed from a U.S. Court for *forum*

*non conveniens*, we may as well do away with the Berne Convention altogether. The issue of ownership of the copyright in a foreign work will always be governed by foreign law. Having that factor dictate the outcome of a *forum non conveniens* analysis, no matter how frivolous the ownership dispute, would deprive any foreign plaintiff of a U.S. forum to adjudicate infringements of its U.S. copyright, in the U.S., by U.S. residents. That cannot possibly be the law.

# DEFENDANTS' STATEMENTS OF THE CASE AND OF THE FACTS CONTAIN NOTABLE INACCURACIES

Defendants misstate several alleged facts and Court findings to argue a more favorable record than actually exists. For example,[1] Defendants represent:

(i)    That Plaintiff's Illustration, which Defendants have blatantly copied, has been in the public domain in the U.S. for more than 70 years. Answering Brief at 35.

(ii)    That Plaintiff "relies on English copyright law to support her U.S. copyright infringement claims." Answering Brief at 3.

(iii)    That there is a dispute about Plaintiff's copyright ownership that requires the application of English law and access to documents and

---

[1] Due to briefing space constraints, Plaintiff is only addressing some claimed facts and allegations that are contradicted by the record. A lack of objection to facts or allegations not addressed here should not be interpreted as agreement with or admission to any other facts asserted by Defendants in their briefing.

witnesses in England.

None of those statements is true.

## 1. Plaintiff Does Not Rely On English Copyright Law To Support Her U.S. Copyright Infringement Claim

In an attention-grabbing heading, Defendants conclude that "Bundy Relies on English Copyright Law to Support Her U.S. Copyright Infringement Claim." They base that conclusion on the absence of certain allegations from Plaintiff's Complaint. Answering Brief at 3-4. Obviously, Defendants' conclusions are not fact. Worse, given the allegations that Plaintiff *did* include in her Complaint, this conclusion is not even remotely arguable.

First, Plaintiff properly alleged that she relies on U.S. copyright law to support her U.S. copyright infringement claims. Plaintiff expressly asserted claims under 17 U.S.C. § 501 and 17 U.S.C. § 1202 for copyright infringement and violation of the integrity of copyright management information. 3-ER-499, 505–507, 512–513, 515–518.

Second, Plaintiff properly alleged that a U.S. copyright registration is not a prerequisite to filing suit for infringement of a foreign work. 3-ER-507. *See, e.g., Cosmetic Ideas, Inc. v. IAC/InterActiveCorp*, 606 F.3d 612, 619 n.12 (9th Cir. 2010) ("As a result of the Berne Convention's mandate that foreign works not be subject to formalities, § 411's pre-suit registration requirement does not apply to non-U.S.

works. See Berne Convention, art. 5."). Defendants' reference to 17 U.S.C. §411(a) to claim that a U.S. copyright registration is "generally" needed to file suit for copyright infringement under U.S. law (Answering Brief at 3) is thus intentionally deceptive because that requirement only applies to a "United States work."

Third, Plaintiff properly alleged that the publication of the Illustration in the U.S. without a copyright notice did not eject it in the U.S. public domain and that "[t]he Illustration is thus protected by U.S. copyright until 2052." 3-ER-506.

In sum, Defendants' catchphrase that Plaintiff is relying on English copyright law to support her U.S. copyright infringement claim is a deliberate misstatement of fact. Moreover, it would be legally impossible to do so because copyright laws are national laws; they do not offer protection against infringement abroad. *See* Opening Brief at 18-20.

## 2. There Is No Controversy Regarding Plaintiff's Copyright Ownership That Needs To Be Resolved Under English (or German) Law Based On Documents And Witnesses In England

C.W. Scott-Giles, Plaintiff's grandfather, is the person clearly identified in all publications of *The Divine Comedy* as the author of the Illustration. 3-ER-530, 3-ER-534, 2-ER-233, 2-ER-241, 2-ER-249. Despite this conspicuous notice, Defendants insist that there are facts that "raise doubts about Scott-Giles' contributions to and copyright ownership in the Illustration." Answering Brief at 4-

6, 27-34. The evidence that Defendants cite for that proposition—*i.e.,* SER-17–18[2], SER-43–44[3] and SER-47–67[4] (*see* Answering Brief at 29)—identifies two, and only two (!), other possible copyright owners: (i) the successors-in-interest to Dorothy Sayers (the "Sayers Trustees") and (ii) Penguin Books. **Both the Sayers Trustees and in-house counsel for Penguin Books have provided sworn statements that they do *not* own the copyright in the Illustration.** 2-ER-46–48, 3-ER-359–376. These sworn statements conclusively settle any "doubts" that Defendants have cast on Plaintiff's ownership and establish *for a fact* that Plaintiff, as C.W. Scott-Giles' undisputed heir, is the sole owner of the copyright in the Illustration. Defendants' blind denial of those sworn declarations and their persistence that "issues" remain is plain bad faith.

Defendants' propositions that (i) Penguin Books' senior counsel and the long-time literary agent for the Sayers Trustees would provide declarations, under the penalty of perjury, at the request of a person they barely know, in which they disclaim all copyright ownership in the Illustration without doing their due diligence,

---

[2] This citation is to Defendants' Motion to Dismiss; this is attorney argument, not evidence.

[3] This citation is to a declaration by Nirvana's counsel Mark Lee in which he *authenticates* documents that Defendants have submitted. His declaration is not evidence either.

[4] This is the only document that technically qualifies as evidence. With respect to this document, Defendants falsely claim that "Bundy's Excerpts of Record omit this evidence." Answering Brief at 5. Yet this document is clearly labeled in Plaintiff's index and included as the first excerpt in Volume 3 (3-ER-314–346).

and that (ii) they may still "chang[e] their position on ownership," (Answering Brief at 32) is not just fantastical, it is extremely patronizing. In fact, as Plaintiff's attorney has clearly explained in her own sworn statement, it is precisely because of the Sayers Trustees' need for more time to do their due diligence that Plaintiff did not obtain their statement until after the district court had already ruled on Defendants' motion, and it is also why Plaintiff sought reconsideration of the district court's ruling based on new evidence before filing this appeal. 2-ER-41–42.

Absent an actual dispute about the ownership of the copyright in the Illustration, there is no need to apply English law (or German law, or any other law) to resolve it. Also, any further "discovery" on the issue would be nothing more than a futile fishing expedition to multiply the proceedings unreasonably and vexatiously.

In fact, even Defendants' allegation that "extant relevant documents … are located in England" misrepresents the record. The evidence shows that both the Reynolds and the Sayers archives, including all original correspondence with C.W. Scott-Giles on which Defendants have been relying to sow doubt (3-ER-314–346; SER-47–67), are located at the Wade Center in Wheaton, Illinois. 2-ER-163–190. *See also* Opening Brief at 47-49.

Since taking deposition testimony from the Sayers Trustees and Penguin Books is unlikely to aid in their defense, the chances of Defendants actually calling these parties to testify is also unlikely. Nevertheless, should Defendants insist on

doing so simply to confirm their sworn declarations, they will encounter no problems. Both parties have already declared to be available to this forum. 2-ER-46–48, 3-ER-359–376.

### 3. The Illustration Is Not In The U.S. Public Domain

Lastly, Defendants falsely state that "[the Illustration] has been in the public domain in the U.S. since 1949 or 1950." Answering Brief at 1. Under the heading "U.S. Publication of The Divine Comedy," they then proceed with a laundry list of misrepresentations that serve no other purpose than attack Plaintiff's credibility and the validity of her claims. Answering Brief at 6-8. Due to space constraints, Plaintiff declines Defendants' invitation to address each one. A *forum non conveniens* evaluation does not concern the merits of a plaintiff's case. Defendants' challenges to the validity of Plaintiff's U.S. copyright are thus, while endlessly fascinating, completely irrelevant to the determination of the present issue—*i.e.*, whether trial in California would be so oppressive and vexatious to the California Defendants as to be out of proportion with Plaintiff's convenience.

Moreover, if Defendants are so convinced that the Illustration is in the U.S. public domain, that their evidence supports that conclusion, and that "the U.S. copyright law issues [are] easily dispensed with" (Answering Brief at 34), it begs the question why they did not dispense with them by moving to dismiss the case on its merits under Fed. R. Civ. P. 12(b) or by seeking summary judgment under Fed.

R. Civ. P. 56. It would have saved all parties and all courts from wasting substantial resources on this motion.

To be clear, for a U.K. work to currently be in the U.S. public domain, it had to have been published in the U.S. within 30 days of its U.K. publication. 17 U.S.C. § 104A. The record shows that it was not. 3-ER-361–362, 3-ER-368–369. Hence, the Illustration is not in the U.S. public domain.[5]

More pertinently, since the Illustration's alleged public domain status in the U.S. is the crux of Defendants' defense, no credible argument can be made that a balancing of the private and public interest factors *strongly* favors dismissal in favor of an English Court. Quite the opposite:

---

[5] Defendants' insinuation that there would have been a time when Plaintiff claimed otherwise is exasperating, and just one example of Defendants' many misstatements of the record. Defendants cite 3-ER-541 for the proposition that "Bundy's counsel previously acknowledged that The Divine Comedy was published in 1949." They immediately follow this up with a citation to 3-ER-541–44, 559 to suggest that Bundy "revised" her original statement to allege "that there was no *U.S.* publication in 1949." Answering Brief at 6. Defendants' innuendos present several problems. First, 3-ER-541–544 does not even contain a reference to any publication date. Second, Plaintiff has always stated that the first publication was in 1949—in England (!). Third, Plaintiff has never acknowledged *anywhere* that there was a simultaneous publication in the U.S. in 1949. In fact, Plaintiff has always adamantly denied that. *See* Plaintiff's First Cease and Desist Letter at 3-ER-542–543 ("As a foreign work that was first published abroad without a U.S. copyright notice, the "Upper Hell" illustration never passed into the public domain and is protected by U.S. copyright"). **In other words, Plaintiff did not "revise" her original allegations in any way.** In fact, the only reason why Plaintiff continued to update her Complaint was to counter Defendants' varying frivolous "defenses." 3-ER-541–486.

(i)    Defendants did not establish that there are any witnesses or evidence in England to support their allegations of a simultaneous U.S. publication in 1949, much less that they would be unable to gain access to them if trial were to take place here; and

(ii)    Defendants did not establish, nor could they, that an English Court—if it even were to accept jurisdiction over Plaintiff's U.S. claims, *quod non*—would be better equipped than a U.S. court to determine the validity and public domain status of a U.S. copyright or to decide Defendants' alleged status as "reliance parties" under U.S. law.[6]

---

[6] Defendants are asking this Court to accept at face value, or make yet another determination on the merits, that Nirvana and the other Defendants qualify as "reliance parties" under the URAA based on their alleged continuous use since 1989. Anwering Brief at 36-38. **Yet no continuous use has been shown and none of the Defendants even existed in 1989** (3-ER-382–386, FER-120–123). Also, none of the Defendants even meet the definition under 17 U.S.C. §104A(h)(4) that reserves reliance status for parties who succeed in the rights of a reliance party "as the result of the sale or other disposition of … significant assets" of that party. In fact, section 17 U.S.C. § 104A(f) illustrates that mere licensees are *not* reliance parties, nor are any other parties that did not acquire "significant assets" from an existing reliance party. Here also, the burden of proof is with Defendants, not Plaintiff.

# ARGUMENT

## 1.   A *Forum Non Conveniens* Dismissal May Not Be Used As A Shortcut To Decide A Plaintiff's Claims On Their Merits

"*Forum non conveniens* is a nonmerits ground for dismissal." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007). "*A forum non conveniens* dismissal 'den[ies] audience to a case on the merits,' *Id.* at 432 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). [I]t is a determination that the merits should be adjudicated elsewhere." *Id.* (citations omitted).

### 1.1.   Defendants did not file a motion to dismiss Plaintiff's Complaint on the merits

Defendants' main arguments, both here and in the proceedings below, have no bearing on their supposed inconvenience of litigating the dispute in their home forum; they merely concern the merits of Plaintiff's causes of action under U.S. law. Defendants' entire defense against Plaintiff's claims for copyright infringement and other violations of U.S. copyright law boils down to the following argument:

(a)    That Plaintiff has no valid U.S. copyright because, in 1949 or 1950, the Illustration was supposedly ejected in the U.S. public domain for failure to comply with registration and other formalities imposed by the 1909 U.S. Copyright Act (Answering Brief at 34-35);

(b) That the enactment of 17 U.S.C. § 104A, which restored U.S. copyright in all foreign works inadvertently ejected in the public domain for failure to satisfy

those formalities, would somehow not apply to *this* foreign work (Answering Brief at 35);

(c) That, if the U.S. copyright in this Illustration was, in fact, restored, as it was for all other foreign works, all Defendants qualify as "reliance parties" under 17 U.S.C. § 104A, excusing them from liability for infringement, because *Kurt Cobain* used the Illustration on a t-shirt prior to 1994 (Answering Brief at 36).

These defenses all concern the merits of the case, and, above all, they involve documents and witnesses in the U.S. and hyper-technical issues of U.S. copyright law, both old and current.

Admittedly, this case is about a decades-long infringement of an older work that has only recently come to light. Based on its opinions (1-ER-17–34, 1-ER-2–15), it appears that the court below may have been swayed by a perceived tardiness in Plaintiff's assertion of her claims and Defendants' unfounded allegations that "the U.S. copyright law issues [are] easily dispensed with" (Answering Brief at 34; SER-19) to resolve these complex issues of U.S. copyright law on a motion to dismiss for *forum non conveniens*.

It bears repeating that Defendants could have, but did not, move to dismiss Plaintiff's claims, with prejudice, on their merits under Fed. R. Civ. P. 12(b). They also could have, but did not, seek summary judgment. A dismissal under Federal Rules of Civil Procedure 12(b) or 56 would have ended litigation altogether, both

here and in any foreign forum. Defendants did not seek adjudication on the merits because an in-depth legal analysis of their arguments would have proven them wrong.

### 1.2. Plaintiff has stated claims under U.S. copyright law upon which relief may and should be granted

Defendants contend that "Bundy's argument that her 'main claims turn on U.S. copyright law' … is an inaccurate and empty mischaracterization." Answering Brief at 34. That is a bold statement.

Plaintiff's Complaint clearly states that (i) her *first* claim for relief is for copyright infringement under U.S. copyright laws (3-ER-512–513), that (ii) Plaintiff is suing Defendants for wrongful conduct "in the U.S. and abroad" (3-ER-510), and that (iii) the bulk of Defendants' infringing activities "outside of the U.S." appears to be concentrated in the United Kingdom and Germany (3-ER-507). Plaintiff even clarified in the proceedings below that, traditionally, U.S. courts have retained jurisdiction over and applied *U.S.* copyright law to copyright infringement claims that involve "predicate acts" in the United States that permitted further infringing acts to be accomplished abroad. *See Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1095 n.9 (9th Cir. 1994) ("[I]f and to the extent a part of an 'act' of infringement occurs within the United States, then, although such act is completed in a foreign jurisdiction, those parties who contributed to the act within the United

States may be rendered liable under American copyright law."). FER-96–97. As such, there may not even be a need for a U.S. court to apply *any* foreign copyright law to decide Plaintiff's claims because it appears that most, if not all, of Defendants' copyright infringements abroad stem from "predicate acts" that they have committed in the United States.

In any event, Plaintiff has stated sufficient facts in her Complaint to support claims for U.S. copyright infringement and other violations of U.S. copyright laws.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991). Plaintiff has sufficiently alleged both. 3-ER-499–521. If Defendants want to challenge the validity of Plaintiff's U.S. copyright, they need to do so in a U.S. court.

## 2. The District Court Correctly Found That, Under *Lucasfilm*, An English Court Will Not Exercise Jurisdiction Over U.S. Copyright Infringement Claims When The Validity Of The U.S. Copyright Is At Issue

Defendants contend that "[i]n light of [the U.K. Supreme Court's holding in *Lucasfilm*], the district court did not abuse its discretion in finding that an English court would exercise jurisdiction over Bundy's U.S. copyright law claims." Answering Brief at 17.

First, the correct interpretation and application of *Lucasfilm Ltd. v. Ainsworth [2011] UKSC 39* to the facts presented here is not a matter of court discretion; it is a question of law and thus subject to de novo review. *See Hisey v. Qualtek U.S., LLC*, No. 16-13477, at *6-7 (11th Cir. Oct. 9, 2018) (reviewing de novo "the district court's application of the law'" on appeal from a *forum non conveniens* dismissal); *Murray v. British Broadcasting Corporation*, 81 F.3d 287, 290 (2d Cir. 1996) (reviewing de novo the question whether the Berne Convention dictates that a foreign plaintiff's forum choice be given the same deference as a domestic plaintiff's).

Second, **the District Court plainly agreed with Plaintiff that, under** *Lucasfilm***, "a U.K. court will not concern itself with determining the validity or registration of a foreign copyright for purposes of evaluating any infringement of the foreign copyright." 1-ER-23.** So, the issue is not with the District Court's interpretation of *Lucasfilm*—which is 100% accurate—but with its application of this rule to the facts.[7] Regrettably, the District Court found that "[t]he registration and validity of Bundy's copyright does not appear to be an issue here." 1-ER-23. Yet *that* finding is clearly erroneous. Defendants' entire defense against Plaintiff's

---

[7] Defendants' citation to *Performing Right Society Ltd. v. Qatar Airways Group QC SC*, [2020] EWHC 1872 (Ch) is unhelpful in that it merely restates the rule articulated in *Lucasfilm* that "the English court ***can*** have jurisdiction over claims for infringement of copyright by non-UK acts and under non-UK law" and that it did so in a case where the validity of the copyright was not in dispute. *Id.* at 14.

U.S. copyright infringement claims is the alleged invalidity of Bundy's U.S. copyright in the Illustration. Answering Brief at 34-38; SER-19–24. Defendants' main allegation is that the Illustration supposedly "has been in the public domain in the United States for more than 70 years" for failure to comply with U.S. copyright formalities "under former U.S. copyright law." Answering Brief at 35. Even more regrettably, the district court's error is the apparent result of Defendants' blatant misrepresentations of basic principles of both national and international copyright law (FER-77–79; FER-55–59; FER-36; FER-8–12). In fact, the misrepresentations are such that Plaintiff felt obliged to submit the parties' briefings in the court below, despite Circuit Rule 30(a)(2). FER-3–119. The "independent relevance" of these excerpts results from Defendants' Machiavellian view in almost all briefings in the court below, and here again (Answering Brief at 15-23), that the end justifies the means and that they can simply misstate the law and facts as they see fit.

Counsel must know that neither the Federal Rules of Civil Procedure nor the California Rules of Professional Conduct endorse such tactics and that, normally, they would give rise to sanctions. Fed. R. Civ. P. 11; Cal. Rules of Professional Conduct, rule 3.3(a). Yet, clearly, neither Defendants nor their counsel even care. And really, why would they? The cost-benefit analysis of employing such tactics is

markedly different for litigants whose combined net worth reaches into the billions than it is for Plaintiff.[8]

On this appeal, yet again, Defendants are simply making up the law and the facts as they go. Defendants' allegation that, under *Lucasfilm* (2-ER-114–154), and for the purpose of applying the *Moçambique* rule cited therein, the "situs" of a copyright is in the country in which the work was created or in which its owner resides (Answering Brief at 18-20), is **absolutely and knowingly false**. *Lucasfilm* clearly held that insofar as copyright even has a "situs," that situs is the country under whose laws the copyright owner is seeking protection. The *Moçambique* rule—which applies to *real* property—is simply a reiteration of the international "act of state doctrine" which prevents courts from "adjudicat[ing] upon the transactions of foreign sovereign states." As such, *Lucasfilm* found that a court cannot enquire into the validity of a copyright granted by a foreign state—*here, the validity of a U.S. copyright granted to an English work by the U.S. governmen*t—"any more than it could enquire into the validity of a concession granted by the Czar." 2-ER-114–154;

---

[8] Interestingly, Defendants also criticize Plaintiff for failing to accuse the district court of bias to get this case reassigned to a different judge. Answering Brief at 53. The reason Plaintiff did not do so is because an accusation of bias is extremely serious, and Plaintiff does not have sufficient evidence to support it. At this point, Plaintiff still believes that the District Court's erroneous findings may merely be the result of Defendants' deliberate misrepresentations of law and fact. Even so, Plaintiff maintains that reassignment is warranted to avoid even the slightest hint of bias— justified or not—and preserve the "appearance of justice."

2-ER-155–162. Defendants' citation of case law that suggests that the "situs" of a copyright is the domicile of its owner has absolutely nothing to do with either the *Moçambique* rule or the U.K. Supreme Court's decision in *Lucasfilm*. In fact, Defendants' persistence that it would be possible to enforce a U.K. copyright (*i.e.,* a copyright granted under U.K. law) in the U.S.[9] defies all recognized principles of international copyright law and completely erodes the underpinnings of the Berne Convention. Accepting Defendants' proposition would be nothing short of revolutionary and would forever change the face of international copyright law. As such, it would certainly warrant a rehearing *en banc* and/or a writ of certiorari.

Third, not even Defendants' synopsis of the *facts* underlying *Lucasfilm* is accurate. Defendants allege that that dispute was over "a work created in the United States." Answering Brief at 16. That is also patently wrong. There is no question— not then, not now—that the Star Wars Stormtrooper helmets in *Lucasfilm* were created *in England*. 2-ER-117. As such, the *Lucasfilm* ruling that an English court will not exercise jurisdiction over the infringement of a U.S. copyright in a U.K. work when the validity of that U.S. copyright is at issue could not be more apposite.

---

[9] Contrary to what Defendants proffer (Answering Brief at 8), even the enforcement in the U.S. of a copyright that was "restored" under the Uruguay Round Agreements Act and 17 U.S.C. §104A is still an enforcement of a **U.S.** copyright, not an English copyright. And, evidently, the restoration of that U.S. copyright is also an "act of state," the validity of which U.K. courts will refuse to "enquire into" under *Lucasfilm*.

Lastly, this Court should also reject Defendants' argument that it may not reverse the district court's finding that England *may* be an adequate forum, because the district court supposedly had a "justifiable belief" as to that forum's adequacy and because it conditioned the dismissal on the English court taking jurisdiction (Answering Brief at 22-23). As shown above, the district court did *not* have a "justifiable belief" that a U.K. court would exercise jurisdiction over a plaintiff's U.S. copyright infringement claims in a case where the validity of that U.S. copyright is at issue. Far from it, the district court explicitly rejected that notion. Moreover, *Bank of Credit and Commerce v. Bk. of Pakistan*, 273 F.3d 241, 248 (2d Cir. 2001) clarifies that (i) "[c]onditions cannot transform an inadequate forum into an adequate one," and that (ii) "[i]f, in the end, the court asserts its 'justifiable belief' in the existence of an adequate alternative forum, it should cite to evidence in the record that supports that belief. In doing so, the district court should keep in mind that it remains the movant's burden to demonstrate the existence of an adequate alternative forum." Here, the district court did neither.

## 3. The District Court Improperly Disregarded Plaintiff's Evidence of Authorship and Copyright Ownership

### 3.1. The District Court abused its discretion by disregarding the Sayers Trustees Declaration on reconsideration

In order to establish that a court abused its discretion in denying a motion for reconsideration based on new evidence, "plaintiffs must show: (1) that the proffered

evidence was 'newly discovered'; (2) that they exercised 'due diligence' to discover this evidence; and (3) that the new evidence is 'of such a magnitude that production of it earlier would have been likely to change the disposition of the case.' *Mills v. Davis*, 53 F. App'x 480, 482 (9th Cir. 2002) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S. A.,*833 F.2d 208, 211 (9th Cir.1987)).

Plaintiff obtained the Sayers Trustees Declaration on November 22, 2021, three weeks after the district court's dismissal of the case. 2-ER-46–48. Plaintiff's attorney submitted a *sworn* declaration in which she explained in detail her dealings with the Sayers Trustees to obtain this declaration and the reasons why she was unable to procure it earlier. 1-ER-42. Precisely because of the importance of this declaration—which *does* lay to rest any "doubts" regarding Plaintiff's copyright ownership—Plaintiff would evidently have submitted it with her opposition to Defendants' motion, had she been able to obtain it in time. As such, the District Court's skepticism regarding the novelty of this evidence and/or Plaintiff's due diligence (1-ER-6) is inappropriate.[10]

In addition, since the issue of copyright ownership dominated its entire opinion of why this case should be decided by an English court, it was unreasonable

---

[10] The court's skepticism regarding the credibility of the sworn statement of Plaintiff's attorney is another indication that reassignment upon remand is warranted to preserve the appearance of justice.

for the district court to find that the Sayers Declaration would not have changed the court's analysis regarding *forum non conveniens*. 1-ER-7.

A *forum non conveniens* analysis may not take place in a vacuum. It cannot accord any weight, much less disproportionate weight, to the applicability of foreign law and other alleged inconveniences to resolve a "controversy" that has been shown to be completely fictional. Even Defendants' own U.K. expert, in his 25 pages of legal theory, could only identify two other parties, aside from Plaintiff, who, *hypothetically*, could have had an ownership interest under U.K. law: the Sayers Trustees and Penguin Books. 3-ER-444–469. Both have provided sworn declarations that they do not.

"[A] district court abuses its discretion if it misapplies the law or makes a finding that is illogical, implausible, or without support in inferences which can be drawn from the record." *Optronic Techs. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 477 (9th Cir. 2021) (citing *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)). The District Court's finding, even after receiving the Sayers Trustees Declaration, that "it is [still] not clear under U.K. law that the copyright ownership issue is settled" (1-ER-6) is illogical, implausible and finds no support in inferences which can be drawn for the record. Therefore, its finding that this declaration would not have changed its analysis at all (1-ER-7) was unreasonable, and its decision to disregard it was an abuse of discretion.

### 3.2. The District Court abused its discretion by not viewing the evidence in the light most favorable to Plaintiff

It is also well established that in resolving a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), "the district court is instructed to accept [Plaintiff's] view of any facts genuinely disputed, unless or until these disputed facts are resolved by an evidentiary hearing or by other appropriate means." *Murphy v. Schneider Nat'l, Inc.*, 349 F.3d 1224, 1235 (9th Cir. 2003). "It is entirely within the district court's discretionary province to decide whether to conduct an evidentiary hearing. However, absent such hearing, any facts in genuine dispute must be viewed in a light favorable to [Plaintiff] as the non-moving party." *Id.*

A similar standard applies in resolving a motion to dismiss for *forum non conveniens*. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) (cleaned up) ("In deciding a motion to dismiss for *forum non conveniens,* a district court normally relies solely on the pleadings and affidavits, though it may order limited discovery.").

Plaintiff properly alleged in her Complaint that the Illustration was created by her grandfather, C.W. Scott-Giles, and attached evidence that clearly identifies him as the author. 3-ER-502–503, 3-ER-522–535. *See also* 2-ER-255, 2-ER-264. Plaintiff also submitted sworn declarations and other evidence that Scott-Giles was never Penguin Books' nor Dorothy Sayers' employee. 2-ER-46–48, 2-ER-260–263, 2-ER-266–267, 3-359–376. Defendants did not submit any affidavits that refute that

21

evidence. The only documents that Defendants did submit to "raise doubts" about Plaintiff's copyright ownership and support their unbridled speculations about other hypothetical copyright owners are excerpts from a book (3-ER-314–346) and an unsworn declaration from a U.K. attorney theorizing about U.K. copyright law (3-ER-444–469). This is a far cry from the "pleadings and affidavits" that a court normally relies upon to decide a motion for *forum non conveniens*. Insofar as the District Court truly believed there to be a genuine dispute about the facts underlying Plaintiff's claim of ownership, it could have, but did not, order limited discovery to resolve it. Absent such a hearing, the District Court was required to accept the facts in a light most favorable to Plaintiff. In failing to do so, the District Court has abused its discretion.

## 4. The District Court Abused Its Discretion By Disregarding Plaintiff's New Evidence Of Ongoing Infringement In The U.S.

Defendants falsely state that Plaintiff is seeking to join unrelated U.S. parties as defendants in this trial. Answering Brief at 51-52. In a sworn statement (2-ER-39–39), Defendants plainly acknowledge that the "additional infringers" that Plaintiff identified (2-ER-49–90), are, if not official licensees, at least official buyers of Defendants' infringing goods. That still makes these U.S. parties not only infringers that are related to Defendants, but also relevant U.S. witnesses to Defendants' wrongful conduct.

Although the District Court did not question the novelty of Plaintiff's new evidence, it still chose to disregard it, stating that it would not have affected the outcome of its analysis because (i) Defendants claim that these parties are not "official licensees" and because (ii) "the Court never conclusively decided whether Bundy owns a copyright interest in the Illustration." 1-ER-6–7. The logical fallacy in this argument is clearly apparent and further illustrates why reassignment upon remand is warranted.

Plaintiff's new evidence indicates, among other things, that (a) the ability to obtain injunctive relief is still a concern (*see* Opening Brief at 51-54), that (b) discovery will likely uncover more U.S. witnesses to Defendants' infringing conduct, and that (c) Plaintiff may need to join, depose, or subpoena records from related U.S. third parties (*see* Opening Brief at 54-55). **As such, Plaintiff's new evidence is relevant with respect to no fewer than six of the seven private interest factors that a court needs to weigh in a *forum non conveniens* analysis.**[11] To simply disregard it, is an abuse of discretion.

---

[11] *See* 1-ER-28 for the seven private interest factors that the District Court considered in its original Opinion. The new evidence that Plaintiff presented affects all of them except for the second one that concerns the litigants' convenience.

23

**5. No Precedent Supports Dismissal For *Forum Non Conveniens* Where The Allegations Concern Violations Of U.S. Laws By California Residents Resulting From Actions In California And Where Defendants Are Sued In Their Home Forum**

Defendants state that "three different panels of this Court have affirmed *forum non conveniens* dismissal in circumstances analogous to those here." (Answering Brief at 14). Yet none of the cases Defendants cite in support involved violations of U.S. laws resulting from actions of U.S. defendants on U.S. soil, nor did they involve a foreign plaintiff who sued in the *only* forum where all defendants were subject to personal jurisdiction.

First, *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689 (9th Cir. 2009) concerned "a French corporation's allegations that a German corporation and a Polish billionaire colluded fraudulently in Europe to wrest control of a Polish wireless telephone company from the French corporation." *Id.* at 690. "[A]ll of the conduct underlying Vivendi's claims occurred overseas, and all of the witnesses but three reside in Europe." *Id.* at 696. In addition, "Vivendi has initiated at least twenty litigation and arbitration actions across Europe to recover its investment in Polska Telefonia." *Id.* at 693.

Second, in *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015), the plaintiff filed suit in Oregon against her Dutch employer, Nike European Operations Netherlands, B.V., and its parent company, Nike, Inc., to re-litigate claims for

"discriminatory conduct [that] occurred in the Netherlands" after litigation of those claims in an adequate Dutch forum had been unsuccessful. *Id.* at 1065, 1077.

Third, in *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945 (9th Cir. 2017), all Defendants were "citizens and residents of Mexico," "the crux of the parties' dispute concern[ed] a contract that was negotiated, signed, and allegedly violated in Mexico," and Plaintiff "failed to identify any witnesses, documents, or evidence located in California." *Id.* at 950. In addition, the Court found that the plaintiff's "only contact with California is the California office it allegedly opened during the same month as oral argument on Defendants' motion to dismiss." *Id.*

In sum, there is nothing "analogous" about these cases. Here, Plaintiff is suing four California-based entities for actions they undertook in California in violation of U.S. copyright laws. 1-ER-18–19. The witnesses and all evidence related to the infringement are, admittedly, located here. 1-ER-28–29. Moreover, Plaintiff sued in the only forum where she could gain personal jurisdiction over all four Defendants, which dispels any notion of forum shopping.

Defendants did not cite any authorities, nor could Plaintiff find any, that support dismissal in a similar situation.

**6.     The District Court Erred In Dismissing the Case Absent A Finding That Trial In This Forum Would Result In Such Oppressiveness and Vexation Of The Defendants As To Be Out Of All Proportion To Plaintiff's Convenience**

Defendants also cite the same cases – *Vivendi*, *Nike*, and *Ayco Farms* – and the absence of any "oppression and vexation" language in those cases to conclude that "[t]he district court did not abuse its discretion in following these authorities to dismiss Bundy's complaint." Answering Brief at 14.

First, as explained above, the facts in those cases were such that the oppression and vexation of Defendants that would result from litigation in the U.S. were implied. In all three cases, the connections with the U.S. forum were found to be so minimal that the plaintiff's forum choice could only have been motivated by forum shopping reasons, "such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum." *Vivendi*, 586 F.3d at 695 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)). These were not cases in which the defendants were sued on their doorstep for acts committed at home, nor were they cases where the plaintiffs sued in the only available forum. Because the plaintiffs in those cases were found to have engaged in forum shopping, the Court

26

relied on *Iragorri* to accord those plaintiffs' choice of forum "less deference." *Vivendi*, 586 F.3d at 695; *Ayco Farms*, 862 F.3d at 950; *Nike*, 793 F.3d at 1076-77.

Second, the appellants in those cases do not appear to have even challenged the legal standard applied by the court below. Both in *Vivendi* and *Ayco Farms*, the appeal only concerned the deference given to the plaintiff's choice of forum and the court's reasonableness in balancing the factors. In *Nike*, the court below did not even address the issue of *forum non conveniens* because it dismissed the case for lack of personal jurisdiction. The Court of Appeals reached *forum non conveniens* only after the district court had declined to consider it to affirm the dismissal "de novo" on that ground. *Nike*, 793 F.3d at 1076.

Third, Defendants acknowledge that the correct legal standard in this circuit for ruling on a *forum non conveniens* motion is the standard articulated in *Carijano v. Occidental Petrol Corp.*, 643 F.3d 1216 (9th Cir. 2011). Defendants even maintain that "the district court correctly cited and applied" that standard because "[it] cited and quoted from *Carijano* no less than fourteen times." Answering Brief at 13. Yet in *Carijano*, this Court categorically adopts the standards enounced in *Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000) and *Cheng v. Boeing Co.*, 708 F.2d

1406 (9th Cir. 1983) years earlier,[12] which have been the law of this circuit ever since:

> "Where a district court 'has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.' *Boston Telecomms.*, 588 F.3d at 1206 (citations and internal quotation marks omitted). **However, when it fails to hold a party to its 'burden of making a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience,'** *id.* at 1212 (quoting *Ravelo Monegro*, 211 F.3d at 514), or when it 'fail[s] to consider relevant private and public interest factors and misconstrue[s] others,' *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1337 (9th Cir. 1984), **then it abuses its discretion.**"

*Carijano*, 643 F.3d at 1236 (emphasis added).

Here, Defendants do not even argue, much less do they make a showing that their inconvenience in having to litigate this issue at home would be so oppressive and vexatious as to be out of proportion to Plaintiff's convenience. *Carijano* is

---

[12] "In *Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983), this court noted that 'the standard to be applied is whether … defendants have made a clear showing of facts which … establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent ... The record in this case indicates the district court misunderstood this standard: rather than treating forum non conveniens as an exceptional tool to be employed sparingly, the district court perceived it as a doctrine that compels plaintiffs to choose the optimal forum for their claim. We recognize that the Supreme Court in Piper held that 'a foreign plaintiff's [forum] choice deserves less deference' than the forum choice of a domestic plaintiff. But less deference is not the same thing as no deference." *Ravelo Monegro*, 211 F.3d at 514.

instructive: when the court fails to hold defendants to that burden, as it did here, it abuses its discretion.

# CONCLUSION

Because Defendants failed to provide any evidence "establishing such vexation and oppression of [them] as to be out of proportion to [Plaintiff's] convenience", *Carijano*, 643 F.3d at 1236, and for all other reasons stated above and in Plaintiff's Opening Brief, the District Court's order granting Defendants' Motion to Dismiss for *forum non conveniens* should be reversed; there is simply no evidence that would come even close to sustaining Defendants' burden of proof.

In addition, Plaintiff respectfully renews her request that, upon remand, the case be reassigned to another judge to preserve the appearance of justice.

Dated: October 7, 2022          MODO LAW, P.C.

                                s/ Inge De Bruyn
                                _____

                                Inge De Bruyn
                                4218 Via Padova
                                Claremont, CA 91711
                                Telephone: (323) 983-2188
                                Email: inge.debruyn@modo-law.com

                                *Attorney for Plaintiff-Appellant*
                                *Jocelyn Susan Bundy*

29

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 21-56305

I am the attorney or self-represented party.

**This brief contains** 6965 **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____ .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Inge De Bruyn    **Date** 10/07/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*